# ROSE, WARDEN *v.* CLARK

No. 84–1974.   Argued March 24, 1986—Decided July 2, 1986

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, REHNQUIST, and O'CONNOR, JJ., joined. BURGER, C. J., filed a concurring opinion, *post*, p. 584. STEVENS, J., filed an opinion concurring in the judgment, *post*, p. 585. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 590.

*W. J. Michael Cody,* Attorney General of Tennessee, argued the cause for petitioner. With him on the briefs were *Jerry L. Smith,* Deputy Attorney General, and *Kymberly Lynn Anne Hattaway,* Assistant Attorney General.

*Paul J. Larkin, Jr.,* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Fried, Assistant Attorney General Trott,* and *Deputy Solicitor General Frey.*

*Scott Daniel* argued the cause and filed a brief for respondent.*

---

*\*John K. Van de Kamp,* Attorney General of California, *Steve White,* Chief Assistant Attorney General, and *Ronald E. Niver* and *David D. Salmon,* Deputy Attorneys General, filed a brief for the State of California as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *Burt Neuborne* and *Charles S. Sims;* and

JUSTICE POWELL delivered the opinion of the Court.

This case presents the question whether the harmless-error standard of *Chapman* v. *California,* 386 U. S. 18 (1967), applies to jury instructions that violate the principles of *Sandstrom* v. *Montana,* 442 U. S. 510 (1979), and *Francis* v. *Franklin,* 471 U. S. 307 (1985).[1]

I

On December 30, 1978, Charles Browning and Joy Faulk were shot to death while they sat in Browning's pickup truck in a remote area of Rutherford County, Tennessee. Respondent Stanley Clark, Faulk's former boyfriend, was charged with the murders.

The evidence introduced at trial showed that Browning, Faulk, and Faulk's two young children (aged 6 and 3) had been driving in Rutherford County on the night of the murders. According to the older child, another vehicle followed Browning's truck for about an hour. Browning pulled his truck into a private driveway, apparently to let the other ve-

---

for the National Association of Criminal Defense Lawyers et al. by *Kim Robert Fawcett* and *Stephen A. Saltzburg.*

[1] In *Connecticut* v. *Johnson,* 460 U. S. 73 (1983), the Court was equally divided on the question whether ordinary harmless-error analysis was appropriate in cases of *Sandstrom* error. Compare 460 U. S., at 84–87 (plurality opinion) (such error "is the functional equivalent of a directed verdict" on intent, and is therefore harmless only when the defendant concedes intent), with *id.,* at 95–99 (POWELL, J., dissenting) (*Chapman* standard applies to *Sandstrom* error). Cf. 460 U. S., at 88 (STEVENS, J., concurring in judgment) (joining affirmance of state-court decision that *Sandstrom* error could not be harmless, but on the ground that the decision was actually one of state law). The *Johnson* plurality noted that state and federal courts were in conflict on this issue. 460 U. S., at 75, n. 1 (collecting cases). Due in part to the divided views in *Johnson,* that conflict has persisted. Compare, *e. g., Tucker* v. *Kemp,* 762 F. 2d 1496, 1501–1503 (CA11 1985) (en banc) (applying *Chapman* harmless-error analysis), cert. denied, *post,* p. 1022, with *In re Hamilton,* 721 F. 2d 1189, 1190–1191 (CA9 1983) (holding that *Sandstrom* error would be harmless only if intent was not contested at trial).

hicle pass. The driver of the second vehicle then pulled in behind Browning, thereby blocking any exit. The driver left his vehicle, walked up to the cab of Browning's truck, and fired four shots at point-blank range. One shot struck Browning in the head, two others struck Faulk in the head, and the fourth struck Faulk in the left shoulder. The killer left the scene in his vehicle. Both Browning and Faulk died.

Faulk's children, who had not been shot, went for help, telling a local resident that "Clicker" (the nickname by which the children knew respondent) had shot Browning and their mother. Earlier that night, police had seen respondent following Browning's truck. Police soon located respondent, but apprehended him only after a high-speed chase. Police found the murder weapon, a .25-caliber pistol that respondent had borrowed from a friend, near respondent's home. At trial, the State relied on the foregoing evidence and on evidence showing that respondent and Joy Faulk had a stormy love affair that Faulk ended in the fall of 1978. Several times after their breakup, respondent threatened to kill Faulk if he ever found her with another man.

Respondent offered two lines of defense. First, he contended that Sam Faulk, Joy's ex-husband, killed the victims because of a dispute concerning custody of the two Faulk children. The State rebutted this contention by introducing evidence that no such dispute existed, and that Sam Faulk was elsewhere when the murders were committed. Second, respondent argued that he was either insane or incapable of forming the requisite criminal intent. To support this argument, respondent introduced evidence that he was suffering from amnesia and could not remember the events of the night of the murders. In addition, some testimony suggested that respondent had been drinking heavily the entire day before the murders. Finally, two defense psychiatrists testified that respondent was legally insane at the time the murders were committed because his depression concerning his recent

breakup with Joy Faulk made it impossible for him to conform his conduct to the law.

At the close of trial, the court instructed the jury on the elements of both first- and second-degree murder. Under Tennessee law, first-degree murder requires proof of premeditation and deliberation, while second-degree murder requires proof of malice. The court's instructions defined malice as "an intent to do any injury to another, a design formed in the mind of doing mischief to another." App. 186. Malice did not require proof of planning or premeditation; a killing "upon a sudden impulse of passion" sufficed if committed with intent to harm another. *Id.*, at 187. The court then charged the jury:

> "All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the State has proven beyond a reasonable . . . doubt that a killing has occurred, then it is presumed that the killing was done maliciously. But this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the Defendant, or exists in the evidence of the State." *Ibid.*

The jury found respondent guilty of first-degree murder for killing Faulk and of second-degree murder for killing Browning.

The Tennessee Court of Criminal Appeals affirmed the convictions, rejecting respondent's argument that the jury instructions had impermissibly shifted the burden of proof as to malice.[2] Respondent then sought habeas corpus relief in

---

[2] The Court of Criminal Appeals noted that, almost immediately following the "presumption" instruction, the judge charged:

"The question of whether the alleged killing was done with malice is for you to determine from the entire case, and you should look to all of the facts and circumstances developed by the evidence to determine whether the State has . . . proven beyond a reasonable doubt the existence of malice. If you have a reasonable doubt as to whether the alleged killing

the Middle District of Tennessee. The District Court held that the malice instruction had violated respondent's right to have his guilt proved beyond a reasonable doubt, as that right was defined in *Sandstrom* v. *Montana.*[3] The court went on to find that the error could not be deemed harmless because respondent had "relied upon a *mens rea* defense" in contesting his guilt. 611 F. Supp. 294, 302 (1983).

The Court of Appeals for the Sixth Circuit affirmed.[4] The court agreed that the malice instruction was unconstitutional under *Sandstrom.* Turning to the question whether the error was harmless, the court reasoned that because respondent contested malice at his trial, an erroneous burden-shifting instruction could not be harmless under governing precedent. App. to Pet. for Cert. A–5 (citing *Engle* v. *Koehler,* 707 F. 2d 241, 246 (CA6 1983), aff'd by an equally divided Court, 466 U. S. 1 (1984)). The court reached this conclusion "despite the substantial evidence of petitioner's guilt," and added:

> "Were we writing on a clean slate, we would direct our inquiry to that suggested by Justice Powell (dissenting) in *Connecticut* v. *Johnson,* 460 U. S. at 97 n. 5:
>
> "'the inquiry is whether the evidence is so dispositive of intent that a reviewing court can say beyond a reason-

---

was done with malice, then the Defendant cannot be guilty of murder in the second degree and you must acquit him of that offense." App. 188.

The Court of Criminal Appeals reasoned that this instruction adequately informed the jurors that the burden of proof on malice remained on the State at all times. App. to Pet. for Cert. A–37 to A–39.

[3] In *Sandstrom* we held that an instruction creating a presumption of malice that has the effect of shifting the burden of proof on intent to the defendant violates due process under the rule of *In re Winship,* 397 U. S. 358 (1970). *Sandstrom* v. *Montana,* 442 U. S., at 523–524. *Sandstrom* was decided shortly before respondent's trial commenced. 611 F. Supp. 294, 296, n. 3 (1983).

[4] The Court of Appeals' judgment is reported at 762 F. 2d 1006 (1985). The court's opinion is unpublished.

able doubt that the jury would have found it unnecessary to rely on the presumption.'

"If that were the question in this case . . . we might be able to respond in the affirmative." App. to Pet. for Cert. A–6.

The court nevertheless affirmed the order granting habeas corpus relief. We granted certiorari limited to the question whether the Court of Appeals' harmless-error analysis was correct.[5] 474 U. S. 816 (1985).

## II

### A

In *Chapman* v. *California,* 386 U. S. 18 (1967), this Court rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions. And since *Chapman,* "we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware* v. *Van Arsdall,* 475 U. S. 673, 681 (1986). That principle has been applied to a wide variety of constitutional errors. *E. g., id.,* at 684 (failure to permit cross-examination concerning witness bias); *Rushen* v. *Spain,* 464 U. S. 114, 118 (1983) *(per curiam)* (denial of right to be present at trial); *United States* v. *Hasting,* 461 U. S. 499, 508–509 (1983) (improper comment on defendant's failure to testify); *Moore* v. *Illinois,* 434 U. S. 220, 232 (1977) (admission of witness identification obtained in violation of right to counsel); *Milton* v. *Wainwright,* 407 U. S. 371 (1972) (admission of confession obtained in violation of right to counsel); *Chambers* v. *Maroney,* 399 U. S. 42, 52–53 (1970)

---

[5] We thus do not consider whether, taken in context, the instructions were permissible under our decisions in *Sandstrom* and in *Francis* v. *Franklin,* 471 U. S. 307 (1985). For purposes of our harmless-error analysis, we assume that the Court of Appeals properly held that the instructions were unconstitutional.

(admission of evidence obtained in violation of the Fourth Amendment). See also *Hopper* v. *Evans*, 456 U. S. 605, 613–614 (1982) (citing *Chapman* and finding no prejudice from trial court's failure to give lesser included offense instruction). Our application of harmless-error analysis in these cases has not reflected a denigration of the constitutional rights involved. Instead, as we emphasized earlier this Term:

> "The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States* v. *Nobles*, 422 U. S. 225, 230 (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) ('Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it')." *Delaware* v. *Van Arsdall, supra*, at 681.

Despite the strong interests that support the harmless-error doctrine, the Court in *Chapman* recognized that some constitutional errors require reversal without regard to the evidence in the particular case. 386 U. S., at 23, n. 8, citing *Payne* v. *Arkansas*, 356 U. S. 560 (1958) (introduction of coerced confession); *Gideon* v. *Wainwright*, 372 U. S. 335 (1963) (complete denial of right to counsel); *Tumey* v. *Ohio*, 273 U. S. 510 (1927) (adjudication by biased judge). This limitation recognizes that some errors necessarily render a trial fundamentally unfair. The State of course must provide a trial before an impartial judge, *Tumey* v. *Ohio, supra*, with counsel to help the accused defend against the State's charge, *Gideon* v. *Wainwright, supra*. Compare *Holloway* v. *Arkansas*, 435 U. S. 475, 488–490 (1978), with *Cuyler* v. *Sullivan*, 446 U. S. 335, 348–350 (1980). Without these basic protections, a criminal trial cannot reliably serve

its function as a vehicle for determination of guilt or innocence, see *Powell* v. *Alabama*, 287 U. S. 45 (1932), and no criminal punishment may be regarded as fundamentally fair. Harmless-error analysis thus presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury.[6] See *Delaware* v. *Van Arsdall, supra,* at 681 (constitutional errors may be harmless "in terms of their effect on *the factfinding process at trial*") (emphasis added); *Chapman, supra,* at 24 (error is harmless if, beyond a reasonable doubt, it "did not *contribute to the verdict* obtained") (emphasis added).

Similarly, harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury. We have stated that "a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction." *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 572–573 (1977) (citations omitted). Accord, *Carpenters* v. *United States*, 330 U. S. 395, 408 (1947). This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases. See *Duncan* v. *Louisiana*, 391 U. S. 145 (1968). Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty.

We have emphasized, however, that while there are some errors to which *Chapman* does not apply, they are the exception and not the rule. *United States* v. *Hasting, supra,*

---

[6] Each of the examples *Chapman* cited of errors that could never be harmless either aborted the basic trial process, *Payne* v. *Arkansas,* 356 U. S. 560 (1958) (use of coerced confession), or denied it altogether, *Gideon* v. *Wainwright,* 372 U. S. 335 (1963) (denial of counsel); *Tumey* v. *Ohio,* 273 U. S. 510 (1927) (biased adjudicator).

at 509. Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. As we have repeatedly stated, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware* v. *Van Arsdall*, 475 U. S., at 681; *United States* v. *Hasting*, 461 U. S., at 508–509.

## B

Applying these principles to this case is not difficult. Respondent received a full opportunity to put on evidence and make argument to support his claim of innocence. He was tried by a fairly selected, impartial jury, supervised by an impartial judge. Apart from the challenged malice instruction, the jury in this case was clearly instructed that it had to find respondent guilty beyond a reasonable doubt as to every element of both first- and second-degree murder. See also n. 2, *supra.* Placed in context, the erroneous malice instruction does not compare with the kinds of errors that automatically require reversal of an otherwise valid conviction.[7] We

---

[7] Unlike errors such as judicial bias or denial of counsel, the error in this case did not affect the composition of the record. Evaluation of whether the error prejudiced respondent thus does not require any difficult inquiries concerning matters that might have been, but were not, placed in evidence. Cf. *Holloway* v. *Arkansas*, 435 U. S. 475, 490–491 (1978). Consequently, there is no inherent difficulty in evaluating whether the error prejudiced respondent in this case. See *United States* v. *Frady*, 456 U. S. 152, 171–174 (1982) (evaluating *Sandstrom* error for prejudice under the "cause and actual prejudice" standard of *Wainwright* v. *Sykes*, 433 U. S. 72 (1977)).

therefore find that the error at issue here—an instruction that impermissibly shifted the burden of proof on malice—is not "so basic to a fair trial" that it can never be harmless. Cf. *Chapman*, 386 U. S., at 23.

The purpose behind the rule of *Sandstrom* v. *Montana* supports this conclusion. *Sandstrom* was a logical extension of the Court's holding in *In re Winship*, 397 U. S. 358 (1970), that the prosecution must prove "every fact necessary to constitute the crime with which [the defendant] is charged" beyond a reasonable doubt. *Id.*, at 364; see *Sandstrom*, 442 U. S., at 520, 523; *Francis* v. *Franklin*, 471 U. S., at 313. The purpose of that rule is to ensure that only the guilty are criminally punished. As the Court stated last Term in *Francis* v. *Franklin*, the rule "protects the 'fundamental value determination of our society,' given voice in Justice Harlan's concurrence in *Winship*, that 'it is far worse to convict an innocent man than to let a guilty man go free.'" *Ibid.*, quoting *Winship, supra*, at 372 (Harlan, J., concurring). When the verdict of guilty reached in a case in which *Sandstrom* error was committed is correct beyond a reasonable doubt, reversal of the conviction does nothing to promote the interest that the rule serves.

Nor is *Sandstrom* error equivalent to a directed verdict for the State.[8] When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. *Connecticut* v. *Johnson*, 460 U. S. 73, 96–97 (1983) (POWELL, J., dissenting). In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant com-

---

[8] "Because a presumption does not remove the issue of intent from the jury's consideration, it is distinguishable from other instructional errors that prevent a jury from considering an issue." *Connecticut* v. *Johnson*, 460 U. S., at 95, n. 3 (POWELL, J., dissenting). Cf. *Jackson* v. *Virginia*, 443 U. S. 307, 320, n. 14 (1979) (suggesting that failure to instruct a jury as to the reasonable-doubt standard cannot be harmless).

mitted the relevant criminal act but did not *intend* to cause injury. See, *e. g.*, *Lamb* v. *Jernigan*, 683 F. 2d 1332, 1342–1343 (CA11 1982), cert. denied, 460 U. S. 1024 (1983). In that event the erroneous instruction is simply superfluous: the jury has found, in *Winship*'s words, "every fact necessary" to establish every element of the offense beyond a reasonable doubt. See *Connecticut* v. *Johnson, supra*, at 97 (POWELL, J., dissenting); Jeffries & Stephan, Defenses, Presumptions, and Burden of Proof in the Criminal Law, 88 Yale L. J. 1325, 1388, n. 192 (1979).

No one doubts that the trial court properly could have instructed the jury that it could *infer* malice from respondent's conduct. See *Francis* v. *Franklin, supra*, at 314–315; *Ulster County Court* v. *Allen*, 442 U. S. 140, 157–163 (1979). Indeed, in the many cases where there is no direct evidence of intent, that is exactly how intent is established.[9] For purposes of deciding this case, it is enough to recognize that in some cases that inference is overpowering. See *Hopper* v. *Evans*, 456 U. S., at 613.[10] It would further neither justice

---

[9] See *Brooks* v. *Kemp*, 762 F. 2d 1383, 1423 (CA11 1985) (Kravitch, J., concurring and dissenting) (emphasizing that juries are free to infer intent from conduct).

[10] In *Hopper* v. *Evans*, we held that States are not constitutionally required to instruct juries about lesser included offenses where such instructions are not warranted by the evidence. The defendant in that case claimed that the trial court should have instructed the jury as to unintentional homicide during the commission of a robbery. We concluded:

"It would be an extraordinary perversion of the law to say that intent to kill is not established when a felon, engaged in an armed robbery, admits to shooting his victim in the back . . . . The evidence not only supported the claim that respondent intended to kill the victim, but affirmatively negated any claim that he did not intend to kill the victim. An instruction on the offense of unintentional killing during this robbery was therefore not warranted." 456 U. S., at 613 (citation omitted).

As *Hopper* suggests, it would defy common sense to conclude that an execution-style killing or a violent torture-murder was committed unintentionally. See *Connecticut* v. *Johnson*, 460 U. S., at 99, n. 7 (POWELL, J.,

nor the purposes of the *Sandstrom* rule to reverse a conviction in such a case.[11]  We accordingly hold that *Chapman*'s harmless-error standard applies in cases such as this one.[12]

---

dissenting).  It follows that no rational jury would need to rely on an erroneous presumption instruction to find malice in such cases.  *Id.*, at 97, and n. 5.

[11] We think the dissent, and not the Court, "asks and answers the wrong question" in this case.  *Post*, at 596 (opinion of BLACKMUN, J.).  We agree that the determination of guilt or innocence, according to the standard of proof required by *Winship* and its progeny, is for the jury rather than the court.  See *post*, at 593.  Harmless-error analysis addresses a different question: what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome?  This question applies not merely to *Sandstrom* violations, but to other errors that may have affected either the instructions the jury heard or the record it considered—including errors such as mistaken admission of evidence, or unconstitutional comment on a defendant's silence, or erroneous limitation of a defendant's cross-examination of a prosecution witness.  All of these errors alter the terms under which the jury considered the defendant's guilt or innocence, and therefore all theoretically impair the defendant's interest in having a jury decide his case.  The dissent's argument—that the Sixth Amendment forbids a reviewing court to decide the impact of a trial error on the outcome, *post*, at 593–594—logically implies that all such errors are immune from harmless-error analysis.  Yet this Court repeatedly has held to the contrary.  *E. g., Delaware* v. *Van Arsdall,* 475 U. S. 673 (1986) (limitation on defendant's cross-examination); *United States* v. *Hasting,* 461 U. S. 499 (1983) (improper comment on defendant's failure to testify); *Moore* v. *Illinois,* 434 U. S. 220 (1977) (admission of improperly obtained witness identification).  Indeed, *Chapman* v. *California,* 386 U. S. 18 (1967), the beginning of this line of cases, applied harmless-error analysis to an error that placed an improper argument before the jury.  *Id.*, at 24–25 (finding comment on defendant's silence harmful).  See also *Hopper* v. *Evans,* 456 U. S., at 613–614 (citing *Chapman,* and finding error in jury instructions harmless).  These decisions, ignored by the dissent, strongly support application of harmless-error analysis in the context of *Sandstrom* error.

[12] The dissent contends that the jury's decision to convict respondent of only one count of premeditated murder "aptly illustrate[s] why harmless-error analysis is inappropriate" in cases where intent is at issue.  *Post*, at 594 (opinion of BLACKMUN, J.).  This argument is without merit.  The jury determined that respondent was guilty beyond a reasonable doubt of

## III

Although the Court of Appeals acknowledged that *Sandstrom* error might in some cases be harmless, its analysis of the issue cannot square with *Chapman*. The court concluded that a *Sandstrom* error could never be harmless where a defendant contests intent. App. to Pet. for Cert. A–5. But our harmless-error cases do not turn on whether the defendant conceded the factual issue on which the error bore. Rather, we have held that *"Chapman* mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless." *United States* v. *Hasting,* 461 U. S., at 509, n. 7. The question is whether, "on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt." *Id.,* at 510. See also *Chapman,* 386 U. S., at 24 ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"); *Connecticut* v. *Johnson,* 460 U. S., at 97, n. 5 (POWELL, J., dissenting) (in cases of *Sandstrom* error, "the inquiry is whether the evidence was so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption"). Thus, the fact that respondent denied that he had

"intend[ing] to take the life" of Joy Faulk "with cool purpose." App. 185 (trial court's charge defining premeditation). The jury then determined that respondent was guilty of the malicious, but not premeditated, murder of Charles Browning. The only alleged error in these instructions was the trial court's instruction that the jury could presume *malice* from a killing. Respondent's (and the dissent's) theory is that a proper instruction on the burden of proof on malice might have led the jury to find *neither* malice *nor* premeditation as to Faulk's killing. This argument is implausible on its face.

We leave the question whether the error in this case was harmless beyond a reasonable doubt to the Court of Appeals on remand. We do suggest that the different verdicts for the two killings in no way support respondent's contention that the *Sandstrom* error in this case was prejudicial.

"an intent to do any injury to another," App. 186, does not dispose of the harmless-error question.

Although we "plainly have the authority" to decide whether, on the facts of a particular case, a constitutional error was harmless under the *Chapman* standard, we "do so sparingly." *United States* v. *Hasting, supra,* at 510. The Court of Appeals has not yet applied *Chapman* to the facts of this case. We therefore remand to that court for determination of whether the error committed in this case was harmless beyond a reasonable doubt.[18]

## IV

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

CHIEF JUSTICE BURGER, concurring.

I join the Court's opinion, although I see no need for remanding for application of harmless-error analysis.

The evidence in this case showed that respondent stalked the victims by car for about an hour. After trapping the victims' truck in a private driveway, respondent fired four shots at point-blank range killing both victims. Two young girls, aged 3 and 6, were in the truck and witnessed the slaying. Their mother was one of the victims. After the murder, respondent left the scene but was apprehended by the police after a high-speed chase. In my view, such evidence overwhelmingly demonstrates that respondent acted with malice.

---

[18] The parties disagree as to the scope of the relevant evidence that must be assessed under *Chapman*. In particular, petitioner argues that evidence of amnesia, of respondent's drunkenness on the day of the murders, and of insanity is irrelevant to malice. Respondent disagrees. These are, of course, issues of Tennessee law in the first instance, and we need not resolve them here. Nor do we express any view as to whether, assuming all the evidence in question is relevant to malice, the error in this case was nevertheless harmless beyond a reasonable doubt.

JUSTICE STEVENS, concurring in the judgment.

The Court correctly concludes that the harmless-error standard of *Chapman* v. *California*, 386 U. S. 18 (1967), applies to the erroneous jury instructions in this case. I do not agree, however, with the Court's dictum regarding the nature of harmless-error analysis.

## I

According to the Court, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Ante*, at 579. This statement stands in sharp contrast with the Court's analysis in *Chapman* itself.

The principal question presented in *Chapman* was "whether there can ever be harmless constitutional error," 386 U. S., at 20. Without questioning the view that constitutional error is always sufficiently serious to create a presumption in favor of reversal, the Court refused "to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful." *Id.*, at 21. Far from announcing any general principle that harmless-error analysis is the rule rather than the exception, the Court stated its holding in this language: "We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Id.*, at 22.

Thereafter in its opinion, the Court emphasized that the burden of showing that constitutional error is harmless is heavier than the burden of showing that ordinary trial error is harmless. The Court noted that "the original common-law harmless error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a

reversal of his erroneously obtained judgment." *Id.,* at 24. It then fashioned its constitutional rule by reference to its earlier decision in *Fahy* v. *Connecticut,* 375 U. S. 85 (1963), stating:

> "There is little, if any, difference between our statement in *Fahy* v. *Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard, although achieving the same result as that aimed at in our *Fahy* case." 386 U. S., at 24.

Rather than creating a broad, new presumption in favor of harmless-error analysis, then, *Chapman* merely rejected the notion that such analysis was always impermissible and articulated a rigorous standard for determining whether a presumptively prejudicial error could, in fact, be deemed harmless.

## II

The Court's statement about the "rule" of harmless-error review, and the reasons for it, is neither an adequate explanation of our current case law nor a sound judgment about what harmless-error jurisprudence should be.

As the Court recognizes, harmless-error inquiry remains inappropriate for certain constitutional violations no matter

how strong the evidence of guilt may be.  *Ante,* at 577–578.
See also *Chapman,* 386 U. S., at 23, n. 8.   The Court sug-
gests that the inapplicability of harmless error to these viola-
tions rests on concerns about reliability and accuracy, and
that such concerns are the only relevant consideration in de-
termining the applicability of harmless error.   *Ante,* at 579.
In fact, however, violations of certain constitutional rights
are not, and should not be, subject to harmless-error analysis
because those rights protect important values that are unre-
lated to the truth-seeking function of the trial.   Thus, racial
discrimination in the selection of grand juries is intolerable
even if the defendant's guilt is subsequently established in a
fair trial.[1]   Racial discrimination in the selection of a petit
jury may require a new trial without any inquiry into the ac-
tual impact of the forbidden practice.[2]   The admission of a

---

[1] See *Vasquez* v. *Hillery,* 474 U. S. 254, 262 (1986) ("[I]ntentional dis-
crimination in the selection of grand jurors is a grave constitutional tres-
pass, possible only under color of state authority, and wholly within the
power of the State to prevent.   Thus, the remedy we have embraced for
over a century—the only effective remedy for this violation—is not dispro-
portionate to the evil that it seeks to deter").   In *Vasquez,* the Court ex-
plicitly rejected the dissent's suggestion that grand jury discrimination
should be subject to harmless-error analysis because of a general principle
that "a conviction should not be reversed for constitutional error where
the error did not affect the outcome of the prosecution."   *Id.,* at 269
(POWELL, J., dissenting).   See also *Rose* v. *Mitchell,* 443 U. S. 545 (1979).

[2] See *Batson* v. *Kentucky,* 476 U. S. 79, 100 (1986) ("If the trial court
decides that the facts establish, prima facie, purposeful discrimination and
the prosecutor does not come forward with a neutral explanation for his
action, our precedents require that petitioner's conviction be reversed").
See also *Turner* v. *Murray,* 476 U. S. 28, 37 (1986) (plurality opinion)
("The inadequacy of *voir dire* [about the possibility of racial prejudice] in
this case requires that petitioner's death sentence be vacated. . . . Our
judgment in this case is that there was an unacceptable risk of racial preju-
dice infecting the *capital sentencing proceeding*").   In *Turner,* the Court
explicitly rejected the dissent's suggestion that the death sentence should
stand because no actual jury prejudice was evident from the record.   See

coerced confession can never be harmless even though the basic trial process was otherwise completely fair and the evidence of guilt overwhelming.[3]   In short, as the Court has recently emphasized, our Constitution, and our criminal justice system, protect other values besides the reliability of the guilt or innocence determination.[4]   A coherent harmless-error jurisprudence should similarly respect those values.

In addition to giving inadequate respect to constitutional values besides reliability, adopting a broad presumption in favor of harmless error also has a corrosive impact on the administration of criminal justice.   An automatic application of harmless-error review in case after case, and for error after error, can only encourage prosecutors to subordinate the in-

---

*id.*, at 47 (POWELL, J., dissenting) ("Nothing in this record suggests that racial bias played any role in the jurors' deliberations").

[3] See *Payne* v. *Arkansas*, 356 U. S. 560, 568 (1958) ("[T]his Court has uniformly held that even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment"); *Chapman*, 386 U. S., at 23, n. 8 (citing *Payne* as "coerced confession" case and example of constitutional error that may not be deemed harmless).   See also *Miller* v. *Fenton*, 474 U. S. 104, 109 (1985) ("This Court has long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment").

[4] See *Allen* v. *Hardy*, *ante*, at 259 ("By serving a criminal defendant's interest in neutral jury selection procedures, the rule in *Batson* may have some bearing on the truthfinding function of a criminal trial.   But the decision serves other values as well.   Our holding ensures that States do not discriminate against citizens who are summoned to sit in judgment against a member of their own race and strengthens public confidence in the administration of justice.   The rule in *Batson*, therefore, was designed to 'serve multiple ends,' only the first of which may have some impact on truthfinding"); *Allen* v. *Illinois*, *ante*, at 375 ("The privilege against self-incrimination enjoined by the Fifth Amendment is not designed to enhance the reliability of the factfinding determination; it stands in the Constitution for entirely independent reasons").

terest in respecting the Constitution to the ever-present and always powerful interest in obtaining a conviction in a particular case.[5] It is particularly striking to compare the Court's apparent willingness to forgive constitutional errors that redound to the prosecutor's benefit with the Court's determination to give conclusive effect to trivial errors that obstruct a defendant's ability to raise meritorious constitutional arguments.[6]

Both a proper respect for a range of constitutional values and the interest in an evenhanded approach to the administration of justice convince me that the Court's dictum about a sweeping presumption in favor of harmless-error review is not only unnecessary, but also unsound.

### III

In this particular case, however, the primary constitutional value protected by our holdings in *Sandstrom* v. *Montana*, 442 U. S. 510 (1979), and *Francis* v. *Franklin*, 471 U. S. 307 (1985), is an accurate determination of the defendant's guilt or innocence. In my opinion, this is also not the kind of error with such an inherently imprecise effect that harmless-error inquiry is ill advised.[7] It follows that the Federal Constitution does not command a rule of automatic reversal, and that the Court of Appeals should review the entire rec-

---

[5] Cf. *United States* v. *Jackson*, 429 F. 2d 1368, 1373 (CA7 1970) (Clark, J., sitting by designation) ("'Harmless error' is swarming around the 7th Circuit like bees. Before someone is stung, it is suggested that the prosecutors enforce *Miranda* to the letter and the police obey it with like diligence; otherwise the courts may have to act to correct a presently alarming situation"). See also *United States* v. *Lane*, 474 U. S. 438, 450–451, nn. 13 and 14 (1986) (STEVENS, J., dissenting) (collecting authorities criticizing the impact of the Court's recent expansive harmless-error jurisprudence).

[6] See, *e. g.*, *Smith* v. *Murray*, 477 U. S. 527 (1986).

[7] Cf. *Holloway* v. *Arkansas*, 435 U. S. 475, 491 (1978) (harmless-error analysis inappropriate in assessing the constitutional error of joint representation in part because such an inquiry requires "'unguided speculation'"); *United States* v. *Lane*, 474 U. S., at 474, and n. 16 (STEVENS, J., dissenting).

ord to determine whether it is able to declare a belief that the constitutional error was harmless beyond a reasonable doubt.[8]

Accordingly, I concur in the judgment.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Stanley Clark was deprived of two rights: the right guaranteed by the Due Process Clause of the Fourteenth Amendment to compel the State of Tennessee to prove beyond a reasonable doubt every element of the crimes with which he was charged, and the right guaranteed by the Sixth Amendment to have a jury of his peers determine whether the State had met that burden. Today, the Court focuses entirely on the former right and disregards totally the latter. A reviewing court's conclusion that the record would support a conviction by a properly instructed jury has no bearing on the question whether a defendant was denied the right to have the jury that actually tried him make that determination. "To conform to due process of law, [defendants are] entitled to have the validity of their convictions appraised on consideration of the case . . . as the issues were determined in the trial court." *Cole* v. *Arkansas*, 333 U. S. 196, 202 (1948). A trial that was fundamentally unfair at the time it took place, because the jury was not compelled to perform its constitutionally required role, cannot be rendered fundamentally fair in retrospect by what amounts to nothing more than an appellate review of the sufficiency of the evidence. I therefore dissent from the Court's holding that harmless-error analysis should be applied.

---

[8] A State, of course, remains free not to apply harmless-error review as a matter of state constitutional protections. See *Delaware* v. *Van Arsdall*, 475 U. S. 673, 701 (1986) (STEVENS, J., dissenting); *Connecticut* v. *Johnson*, 460 U. S. 73, 88 (1983) (STEVENS, J., concurring in judgment). Because the Court of Appeals for the Sixth Circuit is more familiar with Tennessee law than we are, it is appropriate for that court to consider the state of Tennessee law on this subject.

## I

Stanley Clark was indicted on charges of the first-degree murder of Joy Faulk and Charles Browning. He pleaded not guilty to both charges. At trial, Clark contested every element of the crime. He argued that he had not committed the killings, that he could not recall, due to amnesia, any event connected with the killings, and, alternatively, that he was incapable of forming any culpable intent due to mental illness and intoxication. Defense counsel's opening statement and the testimony of psychiatric experts and persons close to Clark put the question whether Clark possessed the requisite mental state directly before the jury.

At the close of trial, the court instructed the jury that malice, "an intent to do any injury to another," was a necessary element of first- as well as second-degree murder. App. 186. The trial court then instructed the jury, which for three days had heard testimony raising doubts about Clark's capacity to form the requisite intent, that "if the State has proven beyond a reasonable doubt that a killing has occurred, then it is presumed that the killing was done maliciously. But this presumption may be rebutted . . . ." *Id.*, at 187.[1] The trial court went on to instruct the jury that voluntary manslaughter is a killing without malice. *Id.*, at 188.

The District Court found, and the Court of Appeals for the Sixth Circuit agreed, that the jury instructions were constitutionally infirm under *Sandstrom* v. *Montana*, 442 U. S. 510 (1979).[2] App. to Pet. for Cert. A-1, A-7. The sole

---

[1] The trial court's wording of the definition of malice and of the presumption of malice for first-degree murder differed slightly from that it gave for second-degree murder, presented in the text. Because these differences are immaterial, the courts below treated the instructions as if they were identical, see App. to Pet. for Cert. A-10, A-12, as does the majority.

[2] Under *Sandstrom*, both mandatory conclusive presumptions, which remove the presumed element from the case once the State has proved the predicate fact, and mandatory rebuttable presumptions, which require the jury to find the presumed element unless the defendant rebuts the pre-

question before the Court is whether such error can ever be harmless. See *ante,* at 576. In *Sandstrom,* the Court held that burden-shifting jury instructions on the question of intent, like the instructions here, violate the due process requirement recognized in *In re Winship,* 397 U. S. 358 (1970), that a conviction is valid only if the State has proved beyond a reasonable doubt every element of the crime. 442 U. S., at 521. Thus, as the majority assumes, there was clear constitutional error in Clark's trial, see *ante,* at 576, n. 5, and the question before the Court is only whether that error was harmless.

## II

The harmless-error rule stems from this Court's recognition that some trial errors are sufficiently tangential to the trial process that they fairly may be overlooked. *Chapman* v. *California,* 386 U. S. 18, 22 (1967). But the Court also has recognized the existence of a class of constitutional errors that "necessarily render a trial fundamentally unfair," *ante,* at 577, and thus are not amenable to harmless-error analysis. "Harmless-error analysis," according to the majority, "presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury." *Ante,* at 578. Thus, errors that deny a defendant "the basic trial process" can "never be harmless." *Ante,* at 578, n. 6. The archetypal examples of such acts are denial of the right to counsel and trial before a biased judge. See *ante,* at 577–578; *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Tumey* v. *Ohio,* 273 U. S. 510 (1927). The salient feature these examples share is that effective defense counsel and an impartial judge play central roles in the basic trial process. The Sixth and Fourteenth Amendments clearly establish the jury as an equally central entity. Cf. *ante,* at 578. What the Court's opinion today fails to

sumption, are unconstitutional. See *Sandstrom* v. *Montana,* 442 U. S. 510, 517–518 (1979); *Francis* v. *Franklin,* 471 U. S. 307, 314, n. 2 (1985). This case involves the latter type.

comprehend is that the instruction in this case interfered so fundamentally with the jury's performance of its constitutionally mandated role that the error involved is analytically indistinguishable from those errors the Court finds inappropriate for harmless-error analysis.

The Framers chose to protect defendants, not primarily by regulating the substance of the criminal law, but by establishing certain trial procedures to be followed in a criminal case. See Underwood, The Thumb on the Scale of Justice: Burdens of Persuasion in Criminal Cases, 86 Yale L. J. 1299, 1317–1318 (1977). The jury's central obligation under the Due Process Clause is to determine whether the State has proved each element of the offense charged beyond a reasonable doubt. See *Sandstrom* v. *Montana, supra; In re Winship, supra.* The Constitution assigns this function "solely to the jury." *Sandstrom,* 442 U. S., at 523. This duty cannot be interfered with, see *Ulster County Court* v. *Allen,* 442 U. S. 140, 169 (1979) (POWELL, J., dissenting), nor delegated to another entity. "Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime. See *Connecticut* v. *Johnson,* 460 U. S. 73, 95, and n. 3 (1983) (POWELL, J., dissenting)." *Cabana* v. *Bullock,* 474 U. S. 376, 384–385 (1986); see also *Cole* v. *Arkansas,* 333 U. S., at 202. The Constitution does not allow an appellate court to arrogate to itself a function that the defendant, under the Sixth Amendment, can demand be performed by a jury.

A jury that receives a constitutionally flawed, burden-shifting instruction on intent is, in effect, directed to return a verdict against the defendant. *Connecticut* v. *Johnson,* 460 U. S., at 84 (plurality opinion). Because a jury is the primary finder of fact, "'a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction.'" *Ibid.,* quot-

ing *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 572–573 (1977). The erroneous instruction invites the jury to abdicate its constitutional responsibility to decide for itself whether the State has proved every element of the offense beyond a reasonable doubt. It is likely that the jury will accept this invitation because "there is no reason to believe the jury would have deliberately undertaken the more difficult task" of evaluating the evidence of intent, when offered the opportunity simply to rely on a presumption, *Sandstrom*, 442 U. S., at 526, n. 13; *Connecticut* v. *Johnson*, 460 U. S., at 85 (plurality opinion). When a defendant contests the issue of intent, a reviewing court will rarely be capable of deciding whether the error contributed to the verdict: it will have no way of knowing how the jury treated the question of intent. See *Sandstrom*, 442 U. S., at 526; *Ulster County Court* v. *Allen*, 442 U. S., at 175–176 (POWELL, J., dissenting).[3]

The verdicts reached in this case aptly illustrate why harmless-error analysis is inappropriate in cases where a defendant contests the element of *mens rea*. Clark was charged with the first-degree murders of two people, who were together in a truck when they were killed. The State used the same evidence to prove that Clark killed Faulk as to prove that he killed Browning. Yet the jury found Clark guilty of the first-degree murder of Faulk and the second-degree murder of Browning. That the jury reached distinct verdicts shows that it focused closely on the question of Clark's mental culpability, the precise issue on which the court gave the constitutionally defective charge. A reviewing court simply cannot determine whether this jury in fact relied on the flawed instruction. It certainly is possible that it did: perhaps the jury did not find sufficient intent to convict

---

[3] Where, of course, a defendant has conceded intent, the use of an erroneous presumption as to intent may be superfluous, and a "reviewing court can be confident that a *Sandstrom* error did not play any role in the jury's verdict." See *Connecticut* v. *Johnson*, 460 U. S., at 87 (plurality opinion).

Clark of second-degree murder, and but for the presumption of malice would have convicted him of voluntary manslaughter, for which malice was not required. It is of no value to point to any evidence presented at trial of Clark's intent; "[a]n erroneous presumption on a disputed element of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence." *Connecticut* v. *Johnson,* 460 U. S., at 85 (plurality opinion). The ordinary view is that a jury adheres to the instructions, *Parker* v. *Randolph,* 442 U. S. 62, 73 (1979) (plurality opinion), and there is no reason to believe that the "lay jury will know enough to disregard the judge's bad law if in fact he misguides them." *Bollenbach* v. *United States,* 326 U. S. 607, 613–614 (1946).

It is true that "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." *Ante,* at 580. But that truism is beside the point here, where the only fact that the jury was required to find in order to trigger the presumption was that "a killing has occurred." App. 187. The jury was instructed to presume criminal intent, the *sine qua non* of criminal responsibility, from the fact of a dead body. The jury may have found the fact that there was a body, but this jury has not met *In re Winship*'s requirement of finding, beyond a reasonable doubt, "every fact necessary to constitute the crime," 397 U. S., at 364: this jury may never have found that Clark acted with malice, an essential element of the crimes of which he was convicted.

## III

The Court recognized 40 years ago that the question a reviewing court must ask "is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedures and standards" required by the Constitution. *Bollenbach* v. *United States,* 326 U. S., at 614. When a jury has not been properly instructed concern-

ing an essential element of the offense that has been charged, the danger exists that the defendant has been deprived of his Sixth and Fourteenth Amendment right to have the jury determine whether the State has proved each element of the offense beyond a reasonable doubt. Faced with an incorrect instruction and a general verdict of guilty, a reviewing court simply lacks any adequate basis for deciding whether the jury has performed its constitutionally required function. Because I believe the Court today asks and answers the wrong question, I dissent.