**Horace William DIX,
Petitioner-Appellee,
Cross-Appellant,**

**v.**

**Ralph KEMP, Warden, Georgia State
Prison, Respondent-Appellant,
Cross-Appellee.**

No. 84–8342.

United States Court of Appeals,
Eleventh Circuit.

Oct. 28, 1986.

Rehearing En Banc Granted
Jan. 26, 1987.*

Susan V. Boleyn, Atlanta, Ga., for respondent-appellant, cross-appellee.

Joseph M. Nursey, Millard C. Farmer, Atlanta, Ga., for petitioner-appellee, cross-appellant.

---

* Opinion vacated.

Before TJOFLAT and JOHNSON, Circuit Judges, and DUMBAULD *, Senior District Judge.

### CORRECTED OPINION

JOHNSON, Circuit Judge:

The panel opinion in this case, published at 763 F.2d 1207 (June 5, 1985), is withdrawn and the following opinion is filed as the substituted opinion of the Court.

Horace William Dix was convicted of murder in 1975 in the Superior Court of Clayton County, Georgia.[1] He later sought post-conviction relief on several grounds, all of which were denied by the state courts. The federal district court granted a writ of habeas corpus on the ground that the state trial court's charge to the sentencing jury did not adequately explain the nature and function of mitigating circumstances. The district court declined to grant relief on any other claim, including a claim that the trial court's instruction impermissibly shifted the burden of proof to the defendant in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), under circumstances where this error could not be considered harmless. We hold that the district court erred in denying relief on the *Sandstrom* issue, and therefore reverse the judgment of the district court. We do not decide whether the sentencing charge did indeed fail to channel properly the discretion of the jury regarding mitigating circumstances, since a resolution of that issue is unnecessary to the disposition of this case.

The petitioner and his wife, Dixie Jordan, divorced in 1974. One month after the divorce, he came to visit at her house. The two were alone in the house when they began to quarrel. She threw an ashtray at him and he claims to remember nothing about what transpired afterwards. His wife's body, which was found in a bedroom of the house, showed that she had been tortured and stabbed to death.

The trial focused on the sanity of Dix at the time of the killing. He presented evidence tending to show that he was insane at the time of the killing, including a history of mental disability beginning with a head injury sustained while in the Navy, a pattern of bizarre behavior close to the time of the killing (including his surprise that his wife had not visited him in jail), and the testimony of a psychiatrist who had examined him, Dr. William P. Sapp. The State presented its own expert witness, Dr. Miguel Bosch, who believed that Dix suffered from a mental disorder, a depressive neurosis, which did not relieve him of criminal responsibility for the killing. The jury, after hearing the instructions on malice and intent now challenged on this appeal, returned a guilty verdict. The trial then entered its sentencing phase and the jury heard the instructions from the trial court regarding mitigating circumstances. The jury recommended the death sentence.

The petitioner takes issue with the jury charge given at the liability stage of the trial regarding malice and intent.[2] He

---

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. Dix was also tried for the subsequent kidnapping of his mother-in-law, sister-in-law and niece. Those charges are not at issue here.

2. The trial court gave the following charge on the issues of malice and intent:

The law presumes every intentional homicide to be malicious until the contrary appears from the circumstances of alleviation, justification, mitigation or excuse.... When and if a killing is proved to your satisfaction to be the intentional act of the defendant, himself, the presumption of innocence with which he enters upon the trial is removed

from him. And, the burden is upon him to justify or mitigate the homicide, unless ... there be no evidence introduced [against him that shows] justification or mitigation....

I charge you that the acts of a person of sound mind and discretion are presumed to be the product of a person's will. But, this presumption may be rebutted....

If such person uses a weapon in a manner in which such weapon is ordinarily employed to produce death and thereby causes the death of a human being, the law presumes the intent to kill. However, this presumption may be rebutted.

The charge also contained some general curative instructions: "It is for you, the Jury, to say whether the evidence in this case ... sufficiently identif[ies] this defendant as the slayer be-

claims that it impermissibly shifted the burden of proof to him in contravention of *Sandstrom v. Montana, supra.* The familiar instructions used by the trial court in this case have been considered in previous cases of this Court and violate the proscriptions of *Sandstrom* in a number of ways.

These instructions establish a mandatory presumption: they go beyond simply authorizing a jury to draw inferences and state that "the law presumes." They ask the jury to presume criminal intent from the use of a deadly weapon, as in *Mason v. Balkcom,* 669 F.2d 222, 224–25 (5th Cir. Unit B 1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983), and to presume that an intentional killing is malicious unless evidence of justification or mitigation shows otherwise, as in *Lamb v. Jernigan,* 683 F.2d 1332, 1341 (11th Cir. 1982), *cert. denied,* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983). As in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the instruction states that the acts of a person of sound mind and discretion "are presumed" to be the product of the person's will. The jury was not told that they had a choice or that they *might* infer that conclusion. *Id.* 105 S.Ct. at 1972 (quoting *Sandstrom v. Montana,* 442 U.S. 510, 515, 99 S.Ct. 2450, 2455, 61 L.Ed.2d 39, 45 (1979)).

■ While the instructions duly note that the defendant may rebut any presumptions against him, they do not describe how he could go about making such a rebuttal. There is no mention of the quantum of evidence necessary to rebut the presumption. Because of this omission, the jury could have concluded that Dix had to produce more than "some" evidence to rebut the presumption. *Davis v. Kemp,* 752 F.2d 1515, 1518 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 2689, 86 L.Ed.2d 707 (1985). As the Supreme Court recently held in *Francis, supra,* the statement that a presumption "may be rebutted," when combined with mandatory language such as "the law presumes," could indicate to a reasonable juror that the de-

fendant bears an affirmative burden of persuasion once the State proves the underlying act giving rise to the presumption. This ambiguity, together with the other misleading aspects of the instruction, created a real risk that the jury would shift the burden of proof to the defendant. The instruction at Dix's trial violated constitutional standards even more clearly than the instructions in *Davis.*

Since we find that the charge to the jury in this case violated the presumption of innocence, we must next address the question of whether the conviction may nonetheless stand on the grounds that the improper charge was harmless error. The Supreme Court recently held in *Rose v. Clark,* — U.S. —, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), that the harmless error standard articulated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 705 (1967), applies to *Sandstrom* errors. The Court found that even errors shifting the burden of proof on the element of intent where intent is a critical issue in the case could be harmless if the evidence was so dispositive of the intent of the defendant that a reversing court can say beyond a reasonable doubt that the improper instruction did not affect the judgment of the jury. 106 S.Ct. at 3107–09, 92 L.Ed.2d at 472 (quoting *Chapman v. California,* 386 U.S. at 23, 87 S.Ct. at 828, 17 L.Ed. at 708).

■ Applying the *Chapman* doctrine to this case, pursuant to the directive in *Rose v. Clark,* this Court may uphold the conviction only if it is clear "on the whole record ... the error ... [is] harmless beyond a reasonable doubt." 106 S.Ct. at 3109 (quoting *United States v. Hasting,* 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96, 101 (1983)). A *Sandstrom* error on the issue of intent can be held harmless beyond a reasonable doubt under two circumstances: (1) where intent was not at issue at the trial; or (2) where evidence of guilt was "overwhelming." *Davis v. Kemp,* 752 F.2d 1515, 1521 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 2689, 86

yond a reasonable doubt.... A person will not    be presumed to act with criminal intention."

L.Ed.2d 707 (1985). In this second situation, the court's analysis should focus on whether evidence of intent, rather than the more inclusive issue of guilt, is overwhelming. *Miller v. Norvell,* 775 F.2d 1572, 1576 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1995, 90 L.Ed.2d 675 (1986); *Tucker v. Kemp,* 762 F.2d 1496, 1502 (11th Cir.1985) (en banc), *cert. denied,* — U.S. —, 106 S.Ct. 3340, 92 L.Ed.2d 743 (1986).

In the instant case, the defendant presented evidence to support an insanity defense. The defendant introduced evidence of a history of mental illness and unstable (perhaps psychotic) behavior, and testified that he could not remember what transpired after his wife threw an ashtray at him. Both the defendant and the state produced expert witnesses to evaluate Dix's sanity; these experts made similar observations and diagnoses but reached differing conclusions regarding Dix's criminal responsibility for the killing.

In *Thomas v. Kemp,* 766 F.2d 452 (11th Cir.1985), *vacated and remanded for further consideration,* — U.S. —, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *upon remand,* 800 F.2d 1024 (11th Cir.1986) (reinstating in part original opinion at 766 F.2d 452)[3], this Court held that an instruction on the issue of intent was a *Sandstrom* violation. The victim of the crime had been savagely beaten, shot, and finally buried alive. 766 F.2d at 455. At trial, the defendant offered an insanity defense similar to the one in the instant case. He testified that he had no memory of the incident, of subsequent telephone calls to the police, or of his own confession. The defendant attributed his lack of memory to the use of drugs prior to the murder. *Id.* at 455–56.

Both in its initial opinion and on remand, the *Thomas* court unanimously concluded that the improper instruction was not harmless error. Applying the *Rose v. Clark* standard on remand, the court held that "it cannot be said beyond a reasonable

doubt that the improper instruction here had no effect on the jury verdict." 800 F.2d at 1025. The court reasoned that since Thomas introduced evidence that he was under the influence of drugs at the time of the crime and thus incapable of forming the requisite intent, and since the erroneous instruction impermissibly shifted the burden of proof on intent to Thomas, it could not be said beyond a reasonable doubt that the instructions did not affect the jury's determination of Thomas' intent—the critical issue in the case. 800 F.2d at 1026.

In the case of *Bowen v. Kemp,* 769 F.2d 672 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986), decided after the initial opinion in *Thomas* but prior to *Rose v. Clark* and *Thomas* on remand, the trial judge gave the same faulty instruction as the one given in *Thomas* and in the instant case: "The acts of a person of sound mind and discretion are presumed to be the product of the person's will but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, but this presumption may be rebutted." This Court held that the instruction was *Sandstrom* error. As in *Thomas,* the petitioner's defense at trial was that, at the time of the crime, he was temporarily insane.

The *Bowen* Court held that the faulty instruction did not become operative unless the jury found that the petitioner was a "person of sound mind." Furthermore, the jury could not have reached this point until the jury had already rejected the petitioner's insanity defense, and "intent no longer was a viable issue in the trial." 769 F.2d at 677. Over a dissent, and without citing or distinguishing *Thomas,* this Court held that the *Sandstrom* error was harmless.

■ Faced with conflicting precedents, we follow *Thomas* and hold that, where the defendant raises an insanity defense, a *Sandstrom* error on the issue of intent

**3.** *Thomas v. Kemp, supra,* was remanded for reconsideration in light of *Rose v. Clark, supra.* Since the *Thomas* court in effect had applied the *Chapman* harmless error standard to the error

in that case, the ruling in *Rose* did not substantively affect the reasoning or result of *Thomas.* See 800 F.2d at 1026.

cannot be harmless on the grounds that intent was not at issue. The *Bowen* decision implies that an insanity defense and a "lack of criminal intent" defense are inseparable, and that the rejection of the former implies the rejection of the latter. However, although an insanity defense consists of evidence tending to negate the existence of criminal intent, *Thomas*, 766 F.2d at 456, the two defenses are not the same. Where a defendant offers evidence tending to show he was insane, a jury might find that the defendant was sane and therefore criminally responsible for his acts, while at the same time finding that the state failed to prove that the defendant had the requisite intent for the crime charged. Based on testimony that Dix was emotionally disturbed and that his wife may have provoked him into a frenzy, a reasonable jury might have rejected the argument that Dix was insane, while still finding that the state failed to prove that Dix possessed the requisite intent for malice murder. We note that the existence of conflicting precedents on this issue may make this case ripe for reconsideration by the en banc court, which can resolve the conflict.

■ Having found that intent was at issue, we must next address the question of whether the evidence of intent was overwhelming. As we have previously noted, the defendant introduced evidence of a history of possible mental illness and unstable behavior, and testified that he could not remember what transpired after his wife threw an ashtray at him. The state's and the defendant's expert witnesses made similar observations and diagnoses concerning Dix's mental health, but reached differing conclusions regarding Dix's criminal responsibility for the acts which he committed. We find that, under these circumstances, the evidence that Dix had the requisite intent for malice murder was not overwhelming. We cannot say beyond a reasonable doubt that the jury did not rely on the faulty presumption in reaching its verdict. *Davis*, 752 F.2d at 1521 n. 7. We therefore hold that the *Sandstrom* error was not harmless.

In view of the necessity to reverse the district court by reason of the *Sandstrom* error, we find it unnecessary to reach petitioner's claim that the trial judge's charge to the sentencing jury did not satisfy the requirements of the Eighth Amendment because it failed to give proper guidance regarding the nature and function of mitigating circumstances.

The judgment of the district court is REVERSED.