949 F.2d 397
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James TUCKER, Petitioner-Appellee,
v.
Gene BORGERT, Respondent-Appellant.
 No. 91-1059.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1991.
 
 Before RALPH B. GUY JR. and ALAN E. NORRIS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 On July 29, 1976, a jury of the Recorder's Court of Detroit convicted petitioner, James Tucker, of aiding and abetting a first degree murder. After exhausting his appeals in the state courts, Tucker filed a petition seeking a writ of habeas corpus in the Eastern District of Michigan. Petitioner alleged that the trial court violated the Due Process Clause of the Fourteenth Amendment in two respects: by incorrectly instructing the jury as to malice and by permitting a key government witness to perjure himself without demanding rebuttal evidence from the prosecution. The district court found merit in both contentions and granted the petition. For the reasons outlined below, we reverse.
 
 I.
 
 2
 Petitioner Tucker, Ronald Woods, and Jerome McFadden were all convicted of the murder of John B. Jenkins, an alleged drug pusher. Police found Jenkins' body in the stairwell of his Detroit apartment on January 6, 1976.
 
 
 3
 At trial, the prosecution relied in part upon the testimony of Willie Lee Lewis, who claimed that he overheard the defendants converse on two occasions while he was employed in a "dope house" with which the defendants were also associated. The first discussion occurred four days before the murder. According to Lewis, Woods said that Jenkins was a snitch and that "something had to be done."
 
 
 4
 The second conversation took place on the night of the murder. Woods asked McFadden to "take out" Jenkins. Petitioner then handed a pistol to Woods, who wiped it clean and gave it to McFadden. The next morning, McFadden told Lewis that he had killed Jenkins.
 
 
 5
 Approximately two months after the shooting, Lewis gave police a statement regarding the murder while being held on armed robbery charges. At petitioner's trial, Lewis admitted that he had pled guilty to unarmed robbery but denied that he had been given a deal in exchange for his testimony.
 
 
 6
 During his opening statement, the prosecutor told the jury that an agreement had been reached with Lewis to allow him to plead guilty to the lesser offense in return for his truthful testimony against the defendants. When defense counsel attempted to point out the inconsistency between the prosecution and Lewis with regard to a deal, however, the prosecutor objected on the ground that his opening statement was not evidence. The trial court sustained this objection.
 
 
 7
 In his closing argument, the prosecutor reiterated that a deal had been made with Lewis and attributed the latter's evasiveness to the fact that he was uncomfortable being a snitch. At the conclusion of the trial, the court instructed the jury that opening and closing arguments did not constitute evidence.
 
 
 8
 Petitioner is currently serving a term of life imprisonment without possibility of parole.
 
 II.
 
 9
 We turn first to petitioner's contention that the trial court erred in its instruction on the malice element for murder. The court's instruction included the following language:
 
 
 10
 [M]alice aforethought is the necessary element of murder both in the first and second degree....
 
 
 11
 .............................................................
 
 
 12
 ...................
 
 
 13
 * * *
 
 
 14
 ... Malice may be either implied or expressed, either one of which is sufficient to satisfy the requirements of the law.
 
 
 15
 Expressed malice is where one with a sedate and deliberate mind and a formed design kills another, which formed design may be evidenced by certainly several circumstances disclosing an inward intention. For instance, threats, former grudges, lying-in-wait, those things would be evidence of expressed malice.
 
 
 16
 Implied malice is where the law draws inferences and conclusions from the act itself. For instance A meets B on the street. A is armed with a revolver. A takes the gun out of his pocket and shoots and kills B without any provocation, without any explanation or justification. This is a showing that this is done with malice. And it's said to be implied malice because the law will imply the existence of malice from the very act itself, from the circumstances under which it was committed.
 
 
 17
 The proof of either expressed or implied malice is all the law requires in order to have malice.
 
 
 18
 In reviewing this language, the Supreme Court of Michigan determined that the inclusion of language suggesting mandatory inferences constituted error because it impermissibly interfered with the function of the jury to determine issues of fact. People v. Woods, 416 Mich. 581, 597, 331 N.W.2d 707, 714 (1982). We agree with this conclusion.
 
 
 19
 Given that the trial court's instruction concerning implied malice was erroneous, we must decide whether this error was harmless. Yates v. Evatt, 111 S.Ct. 1884, 1892 (1991) (citing Rose v. Clark, 478 U.S. 570, 582 (1986), and Chapman v. California, 386 U.S. 18 (1967)). In undertaking this task, we bear in mind that state court findings of fact are accorded complete deference as long as they are supported by evidence. Lundy v. Campbell, 888 F.2d 467, 469 (6th Cir.1989), cert. denied, 110 S.Ct. 2212 (1990).
 
 
 20
 The Supreme Court recently outlined the proper mode of harmless-error analysis:
 
 
 21
 [A] court must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [impermissible] presumption.
 
 
 22
 Yates, 111 S.Ct. at 1893-94; see also Chapman v. California, 386 U.S. at 24 (constitutional error must be harmless beyond reasonable doubt).
 
 
 23
 In this case, the error in the trial court's implied malice instruction was harmless. In reaching this conclusion, we adopt the reasoning of the Michigan Supreme Court. People v. Woods, 331 N.W.2d at 714. The trial court properly instructed the jury on express malice, and it is clear beyond a reasonable doubt that the jury reached its verdict under that theory because the record contains no evidence to indicate that the murder was done pursuant to anything other than a formed design. Consequently, malice could not have been implied by the jury along the lines suggested by the erroneous instruction.
 
 
 24
 Thus, any error with regard to the instruction on implied malice, particularly in light of the overwhelming evidence of petitioner's involvement in a premeditated murder scheme, was harmless. Under these circumstances, we are convinced, as required by Yates, that the jury would have returned the same verdict regardless of the implied malice instruction.
 
 III.
 
 25
 Petitioner's second contention, that Willie Lee Lewis' perjured testimony compromised his right to due process, is likewise unavailing.
 
 
 26
 The government has the burden of correcting false testimony. Napue v. Illinois, 360 U.S. 264, 269 (1959). In the case before us, the prosecution left no doubt that Lewis had reached a plea agreement with the government in exchange for his testimony. During his opening argument, the prosecutor made the following remarks:
 
 
 27
 Willie Lee [Lewis] had been in trouble for the first time in his life and picked up on an armed robbery charge. He was charged with armed robbery and he apparently contacted the police and indicated to them that he had something to tell them. What he had to tell them was this, that he knew how the killing of J.B. Jenkins went down. He wasn't going to tell us for nothing but he wanted some help on his armed robbery case.
 
 
 28
 So the police talked to Willie Lee Lewis and they substantiated what he had to say and it was clear to the police that--after talking with this individual that he did know what he was talking about.... And so we made an agreement with them. We permitted him to plead to a lesser included offense of unarmed robbery for his promise to tell us the truth and to testify truthfully in court.
 
 
 29
 From the outset of the trial, therefore, the jury was on notice that Lewis' testimony resulted from a deal with the government. If anything, his subsequent denial of this fact could only serve to undercut his credibility and indirectly work to the advantage of the defendants.
 
 
 30
 Furthermore, it is clear from the record that the prosecution neither colluded with Lewis with regard to his false testimony, nor did it seek to profit from his lies. Rather, the prosecutor returned to the topic during his closing arguments and admitted that Lewis had been "paid" for his testimony:
 
 
 31
 [Lewis] told you that he was originally charged with armed robbery. He told you that he was permitted to plead to unarmed robbery. And that's basically the gist of the deal that is supplied by the evidence. I don't think it's too unusual for someone to be somewhat evasive about being a snitch....
 
 
 32
 As far as the price the people paid for his testimony, that being permitting a first time felon to plead guilty to another felony, to an unarmed robbery instead of his first armed robbery, it doesn't appear to be an outrageous price to pay for testimony in a murder trial. Providing, we get the truth.
 
 
 33
 With this unambiguous statement, the prosecution fulfilled its duty to apprise the jury of false testimony.
 
 
 34
 Petitioner contends that the government should have put on evidence of the deal rather than rely upon argument. While it would have been preferable for defense counsel to request a stipulation from the prosecution concerning the existence of the plea bargain, this approach is not required. Rather, we agree with the conclusion reached by the Michigan Supreme Court: "[I]n light of the prosecutor's repeated admissions that an agreement had been made, the testimony of Lewis' arrest, guilty plea, and probation, and the emphasis on the agreement made by McFadden's defense counsel, we cannot subscribe to the belief that the jury ignored the prosecutor's statements." People v. Woods, 331 N.W.2d at 717.
 
 
 35
 Our inquiry is whether petitioner's trial was so devoid of fairness as to have amounted to a denial of the due process guaranteed by the Fourteenth Amendment. Lundy v. Campbell, 888 F.2d at 469. Assessing the record as a whole, we find no such denial.
 
 IV.
 
 36
 For the foregoing reasons, the order of the district court, granting the writ of habeas corpus, is reversed.