STATE OF NORTH CAROLINA v. ROY STEVEN WILLIAMS

No. 926SC134

(Filed 7 September 1993)

**Criminal Law § 762 (NCI4th)— reasonable doubt instruction — reference to moral certainty—violation of due process— instruction not harmless error**

The trial court's instruction on reasonable doubt which included two references to "moral certainty" and one reference to "honest substantial misgiving" violated defendant's rights under the Due Process Clause; furthermore, a jury instruction on reasonable doubt which violates the Due Process Clause cannot be harmless regardless of how overwhelming the evidence of defendant's guilt.

**Am Jur 2d, Trial § 1370 et seq.**

STATE v. WILLIAMS

[111 N.C. App. 861 (1993)]

Appeal by defendant from judgment entered 1 July 1991 by Judge Willliam C. Griffin, Jr., in Halifax County Superior Court. Originally heard in the Court of Appeals 3 March 1993.

By order dated 29 July 1993, the North Carolina Supreme Court remanded this case for our reconsideration of the previous opinion reported at 110 N.C. App. 306, 429 S.E.2d 413 (1993), and filed on 18 May 1993, in light of the United States Supreme Court's 1 June 1993 opinion in *Sullivan v. Louisiana*, 508 U.S. ---, 124 L.Ed.2d 182 (1993).

This opinion supersedes our previous opinion in this case.

---

Defendant was charged in a true bill of indictment with assault with a deadly weapon with intent to kill inflicting serious injury, a violation of N.C. Gen. Stat. § 14-32(a) (1986). His first trial resulted in a mistrial when the jury was unable to reach a unanimous verdict.

The evidence at his second trial tended to show that defendant and his wife, Starlett Williams ("Williams"), had had marital problems for years prior to September 1990. On a number of occasions, Williams told defendant that she was planning to leave the house in which they and their two children lived. Defendant told Williams that he did not want her to leave, and, on a number of occasions when he had been drinking, he told her that he would kill her if she left with the children.

Although defendant owned two handguns, including a .357 calibre pistol, and a rifle and shotgun, prior to 10 September 1990, he had never armed himself when he threatened to kill Williams. Williams owned a .38 calibre revolver, which she kept, loaded, in the nightstand next to her bed.

On the evening of 10 September 1990, Williams and the defendant began discussing her plans to move away with the children. During the discussion, defendant, who had not been drinking, told Williams that he was going to kill her. Williams responded, "Then you are going to have to do what you are going to do." Williams instructed her daughter Amy to bring the .38 calibre revolver into the living room, and Amy returned to the room with the gun. After being told by defendant to give him the gun, Amy handed the gun to him. As defendant was holding the gun in his left hand, it fired one time. The bullet hit Williams in the cheek, fracturing her jaw and lodging in her spine. The State's evidence

STATE v. WILLIAMS

[111 N.C. App. 861 (1993)]

tended to show that the defendant "pointed [the gun] right at [William's] face, . . . cocked the trigger, . . . aimed right at . . . [Williams], and . . . pulled the trigger."

Although defendant offered no evidence, he attempted to present his version of the incident through cross-examination of Charles E. Ward ("Ward"), the detective who investigated the shooting. Ward testified that defendant first claimed that "he threw the gun up and the next thing he knew it went off" and that "he thought the gun was on safety and it was an accident." He further testified that, once he informed defendant that the gun did not have a safety, defendant "never mentioned it again."

At the conclusion of the trial, the jury found defendant guilty of the lesser included offense of assault with a deadly weapon inflicting serious injury, a violation of N.C.G.S. § 14-32(b). From judgment imposing an active sentence, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General, T. Buie Costen, for the State.*

*Hux, Livermon & Armstrong, by James S. Livermon, Jr., for defendant-appellant.*

McCRODDEN, Judge.

The sole assignment of error we consider pertains to the trial court's instruction defining for the jury the term "reasonable doubt." Defendant contends that he is entitled to a new trial because the instruction given was indistinguishable from the instruction found unconstitutional in *Cage v. Louisiana*, 498 U.S. ---, 112 L.Ed.2d 339 (1990). We agree that the trial court's instruction violated the principles set forth in *Cage* and applied by our Supreme Court in *State v. Montgomery*, 331 N.C. 559, 417 S.E.2d 742 (1992).

When requested to give an instruction on reasonable doubt to a jury, a trial court has the duty to define the term but is not required to use an exact formula. *Montgomery*, 331 N.C. at 570, 417 S.E.2d at 748. If the trial court undertakes to define reasonable doubt, however, its instruction must be a correct statement of the law. *Id.*

The Supreme Court in *Cage* condemned a combination of three terms: "grave uncertainty," "actual substantial doubt," and "moral certainty," because they suggested a higher degree of doubt than

is required for acquittal under the reasonable doubt standard. *Cage*, 498 U.S. at ---, 112 L.Ed.2d at 342. Relying on *Cage*, the *Montgomery* Court found that the use of the terms "substantial misgiving" and "moral certainty" in combination in the trial court's reasonable doubt instruction violated the requirements of the Due Process Clause. *Montgomery*, 331 N.C. at 572, 417 S.E.2d at 749-50. The *Montgomery* Court found that there was a "reasonable likelihood" that the jury applied the challenged instruction in a way that violated the Due Process Clause, and therefore held that the trial court's instruction gave rise to error under the Constitution of the United States. *Id.* at 573, 417 S.E.2d at 750.

The *Montgomery* Court distinguished *State v. Hudson*, 331 N.C. 122, 415 S.E.2d 732 (1992), *cert. denied*, 506 U.S. ---, 122 L.Ed.2d 136 (1993), in which the Court concluded that there was no error in the trial court's instruction to the jury on reasonable doubt. Although the trial court in *Hudson* used the term "substantial misgiving," it did not equate reasonable doubt with a "moral certainty." *Montgomery*, 331 N.C. at 572, 417 S.E.2d at 749.

In the case under consideration, the trial court's instruction included two references to "moral certainty" ("satisfied to a moral certainty of the truth of the charge" and "abiding faith to a moral certainty in the defendant's guilt") and one reference to "honest substantial misgiving" ("honest substantial misgiving generated by the insufficiency of the proof"). Although the trial court used these terms in a broader definition of "reasonable doubt," we must, in light of *Cage* and *Montgomery*, find that such instruction violated defendant's rights under the Due Process Clause.

In the instant case, the State argues that the instruction given by the trial court was approved by our Supreme Court in *State v. Hammonds*, 241 N.C. 226, 85 S.E.2d 133 (1954). Although the language in *Hammonds* is distinguishable from the language used here, that case was decided well before *Cage* and *Montgomery* and is not, therefore, determinative.

The State also asks that we consider whether a constitutionally deficient reasonable doubt instruction may be harmless error. In our earlier opinion, we relied upon *Montgomery* in concluding that, although the trial court's instruction defining the term "reasonable doubt" violated the Due Process Clause, defendant was not entitled to a new trial. In *Montgomery*, after finding that the trial court's instruction as to reasonable doubt gave rise to constitutional error,

our Supreme Court stated that it "must next determine whether the State has met its burden of showing that the error was harmless beyond a reasonable doubt." *Id.* at 573, 417 S.E.2d at 750. We followed the analysis in *Montgomery* and held in *Williams* that, even though the jury instruction on reasonable doubt was unconstitutional, the evidence against defendant was so substantial that the trial court's error in its instructions was harmless beyond a reasonable doubt.

Subsequent to our earlier decision in this case, however, the U.S. Supreme Court in *Sullivan* held that a constitutionally deficient jury instruction as to the definition of reasonable doubt is not harmless error and, thus, invalidated the defendant's conviction. The Court stated that the denial of the right to a jury verdict of guilt beyond a reasonable doubt is a structural error which defies analysis by the harmless error standards. *Sullivan*, 508 U.S. at ---, 124 L.Ed.2d at 190-91. Thus, a jury instruction on reasonable doubt which violates the Due Process Clause cannot be harmless regardless of how overwhelming the evidence of the defendant's guilt. *Sullivan*, 508 U.S. at ---, 124 L.Ed.2d at 191 (concurring opinion). The U.S. Supreme Court further reasoned that:

> [T]he essential connection to a 'beyond-a-reasonable-doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings. A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, 'the wrong entity judge[s] the defendant guilty.'

508 U.S. at ---, 124 L.Ed.2d at 190 (quoting *Rose v. Clark*, 478 U.S. 570, 578, 92 L.Ed.2d 460, 471 (1986)).

We follow *Sullivan* and find that the trial court's instruction on reasonable doubt, which violated the Due Process Clause, was a structural, not harmless, error.

Since we rule that the trial court committed reversible error, we need not address defendant's remaining assignment of error.

We reverse the judgment of the trial court and remand the case to the trial court for proceedings consistent with this opinion.

Reversed.

Chief Judge ARNOLD and Judge GREENE concur.