[No. B178738. Second Dist., Div. Two. June 27, 2005.]

In re IRIS R. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
ROSA R., Defendant and Appellant.

**COUNSEL**

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Judith A. Luby, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**BOREN, P. J.**—Appellant Rosa R. (mother) appeals[1] from the jurisdictional order entered July 7, 2004, declaring her minor children, Iris R. (born April 1990) and Melvin R. (born February 1997), dependent children of the court

---

[1] Similiano R., the father of the two minors, is not a party to this appeal.

under Welfare and Institutions Code section 300, subdivision (g).[2] Contrary to appellant's related contentions, her absence at the dependency jurisdictional hearing because of her incarceration on charges of kidnapping illegal aliens for ransom and conspiracy to commit extortion did not violate her statutory right to be present (see Pen. Code, § 2625, subd. (d)) or, under the circumstances, result in any prejudicial denial of due process.

## FACTUAL AND PROCEDURAL SUMMARY

In May of 2004, appellant and the minors' father were arrested in Corona on charges of kidnapping for ransom and conspiracy to commit extortion. Police officers found appellant's 14-year-old daughter and 7-year-old son in Long Beach, home alone with no caretaker. The officers took the children into protective custody and then contacted the Los Angeles County Department of Children and Family Services (DCFS).

Appellant, who was incarcerated in the Riverside County Jail, indicated that a friend of hers named "Barbara" might possibly take care of the children. Appellant had no relatives in California who could take the children. A few days later, DCFS also obtained contact information for a paternal uncle in Mexico.

On May 12, 2004, the juvenile court legally detained the children, who were temporarily placed in foster homes. The court appointed counsel for appellant and noted that "this case is going to be problematic" because the parents are incarcerated in a different county and it would likely be difficult to get their appearance in juvenile court. The court indicated that DCFS should "use its best efforts to arrange for transportation from Riverside County to court for the parents," but that it "usually doesn't work." The court also asked the parents' attorneys to contact their clients and "make every effort to try to get them here" so the case can go forward. And the court asked the attorneys to acquaint the parents with the contents of the DCFS reports. When the court suggested that if anything came up in a subsequent report that the matter could be continued to ensure that the parents were aware of the new information, counsel for the parents agreed to such a procedure.

On June 2, 2004, DCFS reported it had found no history of child abuse regarding appellant. The father previously had a case with DCFS regarding another child, Brenda (not appellant's child), and had been arrested in 1999 for driving under the influence. The father acknowledged that someone paid him to keep illegal aliens in his garage, and the police determined they had been kept there against their will.

[2] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

Appellant told DCFS personnel that she had not kidnapped anyone and had no idea the father had been involved in anything illegal. Police, however, found $1,000 and two cell phones in appellant's purse. Her bail was set at $500,000.

Appellant reiterated that the children should be placed with "Barbara." However, DCFS had contacted Barbara, and she had stated she was not able to take the children. DCFS also indicated it would contact the father's adult daughter, Carmen, to see if she could take care of appellant's children.

Regarding the parents' attendance at juvenile court proceedings, on May 26, 2004, the court issued an order directing that the sheriff remove appellant and the father from the county jail and transport them to the juvenile court for a hearing scheduled for June 2, 2004. DCFS personnel also attempted to arrange transportation to the juvenile court for the parents. But a deputy familiar with inmate transportation at the Riverside County Jail advised a DCFS social worker that the parents would not be transported to the juvenile court until their criminal cases were resolved. Meanwhile, DCFS provided the parents with notice of the proceedings and a copy of the DCFS report.

At the hearing on June 2, 2004, the court observed that the removal order was not honored, and appellant and the father thus were not present at the juvenile court hearing. Appellant's counsel stated that she had written to appellant, who wrote back to counsel with assistance from a cell mate. The juvenile court continued the matter so the attorneys could have an opportunity to talk to the parents and attempt to have them brought to court.

At the hearing on June 2, counsel for appellant formally requested that appellant be transported to the juvenile court hearing, citing Penal Code section 2625, but acknowledged the reality of the fact that "it's not going to happen." The juvenile court found that DCFS had made reasonable efforts to get the parents to attend the proceedings.

At the hearing on July 7, 2004, DCFS reported that it had investigated the children's adult half sister, Carmen, who was not certain if she could care for the two children. Carmen was not certain if she could care for them because she did not have enough beds, was going through a separation, and had children of her own with problems of their own. She indicated if she could take the children, she would let DCFS know. Subsequently, Carmen on one occasion helped by taking the children to visit the parents, but she never contacted DCFS to request placement with her.

At the court proceeding on July 7, appellant's attorney stated at the outset that "we're submitting on the amended petition on the [section 300] (g) counts." Later, however, the attorney again cited Penal Code section 2625 and objected to the court proceeding with appellant absent. County counsel informed the court that in addition to the kidnapping charges, the parents were detained on an "immigration hold." The court observed that the children's protection and best interests had to come first, and that the case should move along so "the parents get started with the reunification plan such as its is." The court then sustained the section 300 petition under subdivision (g), which alleged that the parents were incarcerated and unable to make a proper plan for the care of their children.

The court removed custody from the parents and placed the children with DCFS for suitable placement. The court ordered reunification services for the parents, and required them to attend parenting classes and for the father to participate in an alcohol program with random testing in view of his prior driving under the influence cases. The court also ordered weekly collect telephone calls for the parents with the children and individual counseling for the children, and directed that DCFS facilitate visits for the children while the parents are incarcerated.

## DISCUSSION

*Holding the jurisdictional hearing in appellant's absence did not violate Penal Code section 2625, subdivision (d), and was not under the circumstances a prejudicial due process violation.*

### 1. *No violation of a statutory right*

Penal Code section 2625, subdivision (d), provides, in pertinent part, as follows: "Upon receipt by the court of a statement from the prisoner or his or her attorney indicating the prisoner's desire to be present during the court's proceedings, the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court. . . . [N]o petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision (a), (b), (c), (d), (e), (f), (i), or (j) of Section 300 of the Welfare and Institutions Code may be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence . . . ."

■ In the present case, we infer from the statements of appellant's counsel that she wanted to attend the jurisdictional hearing on July 7, 2004. As such, the juvenile court was statutorily required to, and did, issue an order for appellant's temporary removal from the county jail and her production on that date in juvenile court. However, appellant had no statutory right to attend that hearing, since the language of the statute itself does not cover section 300, *subdivision (g)*, which alleged that appellant was incarcerated and unable to make a proper plan for the children. Although the section 300 petition had originally also contained allegations under section 300, subdivision (b), alleging a detrimental home environment because of inadequate adult supervision and a pattern of criminal conduct, those allegations were dismissed by agreement between the parties.

Accordingly, since appellant had no statutory right to be in court for the only allegation to be adjudicated (i.e., the allegation under section 300, subdivision (g)), she cannot claim a statutory violation of Penal Code section 2625.[3]

## 2. *No due process violation warranting a reversal*

Appellant also contends that, apart from any statutory violation, her constitutional right to due process was violated by holding the hearing in her absence. However, in *In re Jesusa V., supra*, 32 Cal.4th 588, where the court found a nonprejudicial statutory violation in adjudicating a dependency petition in the absence of the biological father (the prisoner-parent), the court also held that the prisoner-parent's absence from the jurisdictional and dispositional hearing did not deny him due process. (*Id.* at pp. 625–626.) The court observed that the relevant issues involved in the dependency action had been explored in reports prior to the hearing, that counsel had an opportunity to respond to those points and to present any witnesses, and that there was no indication what evidence would have been offered if the prisoner-parent had been present. Thus, it confidently concluded that even if the parent had been present, no other outcome was possible. (*Ibid.*)

---

[3] Respondent also urges that the statute does not apply for the additional reason that the language of the statute is in the disjunctive, stating that "the prisoner *or* the prisoner's attorney" (Pen. Code, § 2625, subd. (d), italics added) is to be present at the dependency adjudication proceeding. However, the Supreme Court has held that the statute's legislative history indicates that the presence of *both* the prisoner-parent and counsel is required. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 621–623 [10 Cal.Rptr.3d 205, 85 P.3d 2].) Nonetheless, as discussed, *ante*, the statutory attendance requirement does not pertain at all to the section 300, subdivision (g) allegation at issue here.

Similarly, analogizing to the situation with a defendant in a criminal case, the defendant must show that any violation of his right to be present resulted in prejudice or violated the defendant's right to a fair and impartial trial. (*People v. Lucero* (2000) 23 Cal.4th 692, 717 [97 Cal.Rptr.2d 871, 3 P.3d 248]; see also *People v. Waidla* (2000) 22 Cal.4th 690, 742 [94 Cal.Rptr.2d 396, 996 P.2d 46].) Any due process error thus would not per se warrant a reversal, but rather is subject to a harmless error analysis. (See *Rose v. Clark* (1986) 478 U.S. 570, 576–578 [92 L.Ed.2d 460, 106 S.Ct. 3101].)

Here, appellant claims that if she could have been at the hearing, she might have shown how she had made a proper plan for the care and custody of her children. However, appellant apparently gave the police and DCFS all of the information at her disposal regarding possible plans. She hoped that a friend, Barbara, would take care of the children, but Barbara proved unable to do so. Appellant acknowledged she had no relatives in California. And the father's adult daughter, Carmen, also fell through as a placement alternative. Since appellant had all relevant DCFS reports and was in contact with her attorney, it is apparent that any helpful information regarding the placement of appellant's children would have been relayed to the court by either DCFS or appellant's counsel.

Accordingly, there is no reasonable probability the result would have been any different if appellant had personally attended the hearing. Under the circumstances, appellant's absence did not prejudice any constitutional right which would warrant reversal of the jurisdictional order under review.

Finally, we note that the juvenile court and counsel in the present case were apparently resigned to the fact that, as is often the situation, the jail authorities in another county (here, Riverside) simply refuse to obey a juvenile court's order directing that the sheriff remove and transport the prisoner-parent from the county jail to the juvenile court for the scheduled hearing. This habitual and willful disobedience of a court order, which the Legislature has mandated that the court issue (Pen. Code, § 2625, subd. (d)), not only undermines a parent's potential statutory and constitutional rights, but fosters disrespect for the judiciary and its lawful orders. To the extent this problem can be solved by mandated cooperation which addresses fiscal concerns among the counties for the expenses incurred in the transportation of prisoners, we implore the Legislature to address this matter.

## DISPOSITION

The order under review is affirmed.

Ashmann-Gerst, J., and Nott, J.,[*] concurred.

On July 25, 2005, the opinion was modified to read as printed above.

---

[*]Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.