[No. F015496. Fifth Dist. May 20, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
VERNON MERLE BLAKLEY III, Defendant and Appellant.

**[Opinion certified for partial publication.‡]**

‡Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

**COUNSEL**

Houghton Gifford, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Thomas Y. Shigemoto and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HARRIS, J.—

### INTRODUCTION

After a jury trial appellant was found guilty of committing a felonious assault in violation of Penal Code section 245, subdivision (a)(1). The jury further found true the allegation that appellant used a dangerous weapon in violation of Penal Code section 12022, subdivision (b). The trial court denied probation and selected the lower term of two years with a one-year enhancement for a total prison term of three years, minus appropriate credits. Appellant filed a timely notice of appeal.

### FACTS

Late on the night of August 1, 1990, James Steeley had an argument outside the Turlock fairgrounds with Marco Perez. Perez was a friend of appellant Blakley. Blakley was not involved in the original argument. It lasted approximately 10 minutes.

Later in the early morning hours of August 2, 1990, Mr. Steeley and friends again encountered Blakley at Hatch Park in Keyes. Blakley was with friends also. Steeley testified that ne again began to argue with Perez. Blakley came up to Steeley and asked him if he wanted to fight. Appellant then pushed Steeley and they began to fight. After a few blows had been thrown, appellant reached up and punched Steeley in the neck, cutting him. When Steeley told his friend Jeremy Crosthwaite that he had been cut, Crosthwaite tried to attend to him. Another person, however, pulled a knife on Crosthwaite and told him to stay back or he would get the same.

After having his neck cut, Steeley went to a friend's house where he subsequently lost consciousness. He was rushed by ambulance to the hospital. Steeley said he never saw a weapon in Blakley's hands. Steeley remained in surgery at the hospital for an hour and a half.

Appellant was later apprehended in Turlock at an abandoned duplex. The arresting deputy saw what appeared to be dried blood on Blakley's fingers. A

pickup truck at the same scene also appeared to have dried blood on the passenger door. There was a black-and-white shirt lying on the floor and some sort of razor knife with tape around the handle on the dashboard of the pickup truck. Later a search warrant was obtained for the pickup truck. Sheriff's deputies discovered a black-and-white shirt, a homemade knife, a shotgun and a carpet knife.

Appellant testified in his own defense. He explained that he intervened at Hatch Park during the verbal exchange between Steeley and Perez because Steeley was harassing Perez to fight with him. Steeley then transferred his attention to Blakley and pushed him and hit him. Steeley's friends were then starting to surround Blakley and he was looking from side to side to make sure no one was going to attack him from the side. As Mr. Steeley's friends surrounded him, Blakley pulled out his box cutter to try to scare Steeley. When Steeley charged him, Blakley put his hand up to block the blow and cut Steeley unintentionally.

Blakley knew he had cut Steeley when he left the scene. He made no attempt to obtain assistance for Steeley because he heard Steeley yell out, "Go get the gun." It was at that point that Blakley ran away.

DISCUSSION

I.

FLIGHT INSTRUCTION.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.

WRITTEN COPIES OF JURY INSTRUCTIONS.

 Appellant contends the trial court committed reversible error when it refused to allow the jury to have written copies of the jury instructions. Penal Code section 1093, subdivision (f) mandates that the jury shall be advised by the trial court that a written copy of jury instructions is available to the jury upon the jury's request.[2] The trial court in the instant action specifically told the jury that the written instructions would not be made

---

*See footnote, *ante,* page 1019.

[2]Penal Code section 1093, subdivision (f) provides in pertinent part:

". . . Upon the jury retiring for deliberation, the court shall advise the jury of the availability of a written copy of the jury instructions. The court may, at its discretion, provide

available, but if they wanted the instructions they could be brought back and have them recited or reread. At the commencement of the instructions, the court advised the jury as follows:

"First, while I'm working from some books and papers I'm not in a situation to hand to you the instructions. If you want the instructions, the way they can be brought back to you is to have me recite them or reread them and I say this because in the past I have found that people see me working through some papers up here, you know, if I don't do this in a beforehand way the first thing that happens a lot of times when a jury retires is I get a note that says may we please have the papers that you were reading from and there [*sic*] are just simply not in a form that I can do that. And so maybe we can, by anticipating that issue get it in the proper place to begin with. I'm be—I'll be able to restate them to you but they are not available for your taking them in and pouring over them in a more detailed way in the jury room."

Given the mandate of section 1093, subdivision (f), this procedure was clearly and unquestionably error. Under the circumstances of the instant case, however, it cannot be concluded that the error mandates reversal. Following the lead of the United States Supreme Court in *Rose* v. *Clark* (1986) 478 U.S. 570, 576-577 [92 L.Ed.2d 460, 469-470, 106 S.Ct. 3101], the California Supreme Court applies a *Chapman*[3] harmless beyond-a-reasonable-doubt standard of review for federal constitutional errors and a *Watson*[4] miscarriage of justice standard of review for errors involving state law, especially statutory law. (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1267 [270 Cal.Rptr. 451].)

 The error complained of in the instant action is not an error of constitutional dimension. There is no constitutional right to have a physical copy of the jury instructions with the jury during deliberations. Nor does the statutory requirement underlie or embody a fundamental notion of due process or some other constitutional value. It is a purely statutory requirement.

 It is instructive to note that the jury in the instant case was aware of the fact that it could make requests of the trial court and that it did so. For instance, the jury requested to view the weapon used by appellant, and it also requested part of appellant's testimony read back to it. The jury retired to deliberate at 10:50 a.m., took a lunch break, had appellant's testimony read

---

the jury with a copy of the written instructions given. However, if the jury requests the court to supply a copy of the written instructions, the court shall supply the jury with a copy."

[3]*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].

[4]*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

back to it, and returned its verdict at 2:34 p.m. The jury never requested that any of the instructions be reread.

Had the jury indicated some confusion over or misunderstanding of the instructions in a note to the court or had it requested a rereading of the instructions, appellant's contention might be more persuasive. Under the circumstances of the instant case, however, it is clear applying a *Watson* standard that the result would not have been more favorable to appellant had the error not occurred. Under that standard, no miscarriage of justice occurred as a result of the error.

III.

LEGALITY OF IMPOSITION OF A WEAPONS ENHANCEMENT.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Dibiaso, Acting P. J., and Vartabedian, J., concurred.

---

*See footnote, *ante*, page 1019.