Filed 1/22/14  P. v. Enriquez CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B243811 |
| Plaintiff and Respondent, | (Super. Ct. No. 2012004187) (Ventura County) |
| v. | |
| ANDREW ENRIQUEZ, | |
| Defendant and Appellant. | |

Andrew Enriquez appeals from a judgment following his conviction by jury of corporal injury to a spouse/cohabitant (Pen. Code, § 273.5),[1] and assault with a deadly weapon (§ 245, subd. (a)(1)), with special findings that he inflicted great bodily injury (§ 12022.7, subd. (e)), and used a deadly weapon (§ 12022, subd. (b)(1)).  Appellant admitted a prior conviction and three prison term enhancements (§§ 273.5, subd. (e), 667.5, subd. (b)), and was sentenced to a total of 14 years in state prison.  Appellant contends the trial court erred by providing the jury with only a portion of the written instructions on propensity evidence and assault with a deadly weapon.  We affirm.

FACTS

[1] All statutory references are to the Penal Code.

Nicole T. arrived at a hospital emergency room around 9:00 a.m. on November 3, 2011. She had a ruptured right eardrum, with resultant hearing loss, a scalp laceration and a skull fracture. Doctors closed the laceration with staples. Her hearing loss persisted for another month. She told hospital personnel and Officer Jack Ortega that her "boyfriend" had struck her with a power tool. She hesitated to tell Ortega what had occurred and did not initially identify appellant as her boyfriend because she feared incriminating him.

After conducting some research, Ortega returned to the hospital and told Nicole that he believed appellant was her boyfriend. She started to cry. She did not deny that appellant was her boyfriend or identify anyone else as her boyfriend.

While at the hospital, Nicole discovered she was pregnant with appellant's child. She asked a long-time friend, Sarah Hoyland, to come to the hospital. When Hoyland arrived, Nicole told her that appellant had struck her in the head with a power tool, but said she did not want to get him into trouble.

Officer Teddy Symonds interviewed Nicole the next day. Once again, she was reluctant to speak about the incident. She said she feared retaliation from appellant, although she still loved him. She said she had dated appellant earlier, but during a period he was in jail, she had started seeing another man. Upon appellant's release, she resumed her relationship with appellant and ended the other one.

Nicole told Symonds that on the day of the incident, appellant began looking at her cell phone. He saw text messages she had sent to the other man as well as a video of her performing a sexual act on herself. She said appellant became enraged and struck her on the head with a power tool, knocking her to the ground. Although she had difficulty remembering exactly what occurred after she was struck, she recalled that appellant took her to the hospital. She was adamant that she did not want appellant to be prosecuted.

Symonds discovered that appellant, who was on parole, was residing at Sheryl Cano's apartment. Cano handed police officers the key to the apartment, giving them permission to enter. As Symonds was unlocking the door, appellant started to

2

unlock the deadbolt. Upon seeing police, he ran into his bedroom and locked the door. Symonds announced police were present and told appellant to open the door. When he did not respond, officers kicked in the door. They discovered appellant in bed with a woman and arrested him. They found two power drills in the room.

Nicole formally requested that the district attorney's office dismiss the charges, claiming she fell on a power tool while arguing with appellant. At the preliminary hearing, she asserted, for the first time, that a man named Bobby Goodrich was the assailant. She said he was a drug dealer from Santa Paula, but gave no other information. An investigator for the prosecution obtained a photograph of a Bobby Goodrich with ties to the area, but Nicole did not recognize him. Hoyland testified she had never heard Nicole mention Bobby Goodrich.

At trial, the prosecution introduced 20 recorded telephone calls made by appellant while he was in jail. Most of them were to Nicole. During those calls, appellant tried to influence testimony and fabricate evidence. Among other things, appellant asked Nicole to say she had lied to police about what had occurred. Although Nicole wished to help appellant, she frequently admitted she was afraid of him and asked him to take anger management classes. She said: "[F]or me to go back around you, it's gonna be scary. Especially when you get mad, I'm gonna be . . . wanting to run for that door."

DISCUSSION

The sole issue on appeal is whether appellant's due process rights were violated because the jury was not provided with a complete copy of the written instructions. He claims, and the record presented to us confirms, that the packet given to the jury omitted page 11, which contained the latter part of the instruction on propensity evidence of uncharged domestic violence (CALCRIM No. 852) and the first part of the instruction on assault with a deadly weapon (CALCRIM No. 875). He argues the omission constitutes a failure to instruct on those issues, and prejudicial error. We disagree.

3

"The risk of a discrepancy between the orally delivered and the written instructions exists in every trial, and verdicts are not undermined by the mere fact the trial court misspoke." (*People v. Mills* (2010) 48 Cal.4th 158, 200.) The error in *Mills* was that the oral instruction misstated the law. Our Supreme Court determined that this was not reversible error since the written instruction was correct and controlled over the spoken word. (*Id.* at pp. 200-201.) While the omission here may be of greater import in the abstract, it does not automatically require reversal. (See *People v. Ochoa* (2001) 26 Cal.4th 398, 446-447, abrogated on other grounds as stated in *People v. Prieto* (2003) 30 Cal.4th 226, 263, fn. 14 [omission of two instructions from written packet sent into jury room was not error].)

Section 1093, subdivision (f) states in pertinent part: "Upon the jury retiring for deliberation, the court shall advise the jury of the availability of a written copy of the jury instructions. The court may, at its discretion, provide the jury with a copy of the written instructions given. However, if the jury requests the court to supply a copy of the written instructions, the court shall supply the jury with a copy." If the court does not advise the jury that written instructions are available upon request, or does not provide the jury with a complete set of instructions after they have been requested, the court has erred. (*People v. Seaton* (2001) 26 Cal.4th 598, 673; *People v. Ochoa*, *supra*, 26 Cal.4th at pp. 446-447.)

A criminal defendant, however, has no state or federal constitutional right to be provided with a written copy of the jury instructions. (*People v. Ochoa*, *supra*, 26 Cal.4th at p. 447; *People v. Samayoa* (1997) 15 Cal.4th 795, 845.) Section 1093 does not "underlie or embody a fundamental notion of due process or some other constitutional value. It is a purely statutory requirement." (*People v. Blakley* (1992) 6 Cal.App.4th 1019, 1023.)

Before instructing the jury, the trial court stated: "[The instructions] are a little over 14 pages long. You do not need to take notes. We will have copies of these instructions for you in the jury deliberation room." It is undisputed the trial court

4

correctly and completely read those instructions to the jury. It also is undisputed the jury was provided with a packet of written instructions, marked as Court's Exhibit No. 4. Appellant is correct that the original of that exhibit, transmitted to the jury by the trial court, omits page 11. He also is correct that portions of the instructions on propensity evidence and assault with a deadly weapon would have appeared on that page.

The People contend it is not clear that page 11 was missing at the time the exhibit was provided to the jury. It does appear that the exhibit was disassembled and re-stapled at least once; thus, it is possible the page was removed after the jury had completed its deliberations. Because the pages are consecutively numbered, even a cursory review of the document would have revealed a missing page. The jurors did not advise the trial court of any omission or request clarification of any instruction. Their only question related to the special allegation of personal use of a deadly weapon. The trial court responded by referring the jurors to the definition of that allegation, which was on page 12. Again, the jury raised no issues regarding the instructions.

Even assuming page 11 was missing, the trial court did not violate section 1093, subdivision (f), because the jury did not expressly request written instructions. (*People v. Seaton, supra,* 26 Cal.4th at p. 673; *People v. Ochoa*, *supra*, 26 Cal.4th at pp. 446-447.) Moreover, appellant has not shown that but for the missing page, the jury would have reached a result more favorable to appellant. We conclude any error was harmless in light of the oral instructions, the prosecutor's closing argument and the evidence presented. (*Seaton,* at p. 673 [failure to provide jury written set of instructions harmless error]; *People v. Cooley* (1993) 14 Cal.App.4th 1394, 1399 [same].)

Appellant's primary complaint is that the missing page contained the protective admonition portion of the propensity evidence instruction[2] and the four

---

[2] Page 11 would have included the following portion of CALCRIM No. 852: "If you decide the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and based on that decision also conclude that the defendant was likely to commit and did commit corporal injury to a cohabitant as alleged in Count 1 and assault with a deadly weapon as alleged in Count 2 as charged here. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only

elements of assault with a deadly weapon.**3**  Again, it is undisputed that the trial court's oral instructions were complete.  There is nothing to suggest the jury was confused either by the instructions as orally given or by the absence of a portion of two instructions from the written packet.  "It is axiomatic that '[j]urors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions. [Citation.]'"  (*People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1502.)

In addition, the prosecutor specifically referenced both instructions in his closing argument.  He appropriately stated that under CALCRIM No. 852, "if you believe it is more likely than not that defendant committed prior acts of violence, you may, *but are not required to*, conclude from the evidence that the defendant was disposed or inclined to commit domestic violence, and also conclude that the defendant was likely to commit and did commit the crimes charged in this case."  (Italics added.)  The prosecutor also reiterated each of the four elements of assault with a deadly weapon in CALCRIM No. 875, explaining how he believed they applied in this case.  Appellant does not claim the prosecutor misstated those elements.

Finally, contrary to appellant's assertions, the evidence supporting the judgment is overwhelming.  Appellant's defense was that Bobby Goodrich or another man injured Nicole, and that she was motivated by jealousy and revenge to implicate appellant.  The plausibility of this defense was undermined by several factors,

---

one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of corporal injury to a cohabitant as alleged in Count 1 and assault with a deadly weapon as alleged in Count 2.  The People must still prove each allegation beyond a reasonable doubt.  Don't consider this evidence for any other purpose."

**3** Page 11 would have included the following portion of CALCRIM No. 875: "The defendant is charged in Count 2 with assault with a deadly weapon other than a firearm in violation of Penal Code section 245.  To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; two, the defendant did that act willfully; three, when the defendant acted he was aware of facts that would lead a reasonable person to realize his act, by its nature, would directly and probably result in the application of force to someone; and four, when the defendant acted he had the present ability to apply force with a deadly weapon other than a firearm to a person."

particularly the admissions in appellant's recorded telephone conversations with Nicole. Seeking to gain her cooperation, appellant repeatedly said he loved her and apologized for past actions. In one call, he promised, "I will be a better man to you." Nicole responded, "[A]ll I really need to know is that you're not gonna -- we cannot have physical violence." Appellant asked, "Are . . . you gonna let me go down for this?" She said, "I did the best I could to not involve . . . you or anything like that. My family and friends are gonna want to see you go down. . . . I don't know what would be the best way to help you with this." Appellant replied, "All you have to do is tell them . . . it was nothing like that. Pushing and shoving maybe, but nothing else . . . ." Nicole said, "I think that was like a meth rage or whatever you went through -- I seriously do think it was a meth rage, and I seriously hope that you wouldn't act like that if you weren't on meth."

In their next call, appellant said, "I'm gonna need you to go and make a statement saying that . . . you lied. . . . If you can't do that I'll . . . understand, but . . . they're gonna try to . . . stiff me." He asked, "Do you know what will work with these [people]? . . . A jealousy issue. . . . You could tell them something, whatever." The next day, appellant told her he would get 13 years if convicted of assault with a deadly weapon, and said it would all go away if she told them, "I made that shit up. That . . . homeboy never hit me with nothin'." He suggested she fill out a dismissal of charges form, and "tell the truth and let [th]em know that . . . there was never a weapon involved . . . ." Nicole did so, claiming she fell on a power tool during an argument with appellant.

At no point during these calls did they mention Bobby Goodrich or any other possible perpetrator. The focus was on trying to convince the district attorney that a weapon was not involved. In light of this evidence, it is not reasonably probable appellant would have received a more favorable result had the written packet contained

7

the complete CALCRIM instructions Nos. 852 and 875.  (See *People v. Ochoa, supra,* 26 Cal.4th at p. 447.)

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.