Filed 2/16/22  P. v. Tapia CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B309407 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA025820-02) |
| v. | |
| ELIAS TAPIA, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge.  Remanded, with directions.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Amanda V. Lopez and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1997, defendant and appellant Elias Tapia, Jr. and co-defendant Juan Valenzuela were convicted of the second degree murder of Norman LaGrone.[1]  (Pen. Code, § 187, subd. (a).)[2]  The jury was instructed under CALJIC No. 3.02 that it could find Tapia guilty of murder as a natural and probable consequence of assault with a deadly weapon.  Tapia was sentenced to 15 years to life in prison, plus a determinate term of 4 years.

Tapia appeals the trial court's order denying his petition for vacatur of his murder conviction and resentencing under Senate Bill No. 1437 and Penal Code section 1170.95, following a hearing held pursuant to section 1170.95, subdivision (d)(3).

In his opening brief, Tapia contended that the trial court's failure to follow the correct procedure and employ the correct standard of proof at his section 1170.95, subdivision (d)(3) hearing required reversal.

The People responded that (1) the trial court acted as an independent fact-finder, as section 1170.95 requires, and (2) substantial evidence supports the trial court's finding that Tapia acted with implied malice beyond a reasonable doubt.

_____

[1] Tapia was also convicted of assault with a deadly weapon upon Oscar Thomas.  (§ 245, subd. (a)(1).)

[2] All further statutory references are to the Penal Code unless otherwise indicated.

Alternatively, the People asserted that any alleged error was harmless.

On October 5, 2021, before the briefing was completed in this matter, the governor signed Senate Bill No. 775 (Stats. 2021, ch. 551, §§ 1–2) (Senate Bill 775) which, effective January 1, 2022, amends section 1170.95. On November 10, 2021, Tapia moved for leave to file supplemental briefing on the effect of the new legislation, in light of the fact that his case would still be pending when the amendments to section 1170.95 became effective. We granted the motion and permitted the People to file supplemental briefing in response, if deemed necessary. The parties both filed briefs. They agree that Senate Bill 775 applies in Tapia's case and that the trial court acts as a finder of fact who must determine whether the prosecution has met its burden beyond a reasonable doubt, but otherwise maintain their positions as set forth in the original briefing.

We conclude the record is ambiguous as to whether the trial court: acted as independent factfinder that determined beyond a reasonable doubt Tapia is guilty of a still valid theory of murder; or, determined only that there is sufficient record evidence that would support a jury's finding of guilt under current law. Because the trial court must act as an independent factfinder, we remand for the limited purpose of allowing the trial court to either clarify that it so acted, or for the trial court to redetermine the matter under the correct standard.

## FACTS AND PROCEDURAL HISTORY

### *The Murder*

Our prior unpublished opinion in *People v. Tapia* (Dec. 23, 1998, B117471 (*Tapia*)), which is included in the appellate record, recites the facts as follows:

"At about 1:30 a.m. on August 23, 1995, Kevin Moran and Norman LaGrone were talking outside a liquor store at the intersection of Anaheim and St. Louis Streets in Long Beach. [Codefendant] Valenzuela, Tapia and six to seven other Hispanic men approached Moran and LaGrone. Tapia was carrying a baseball bat. Valenzuela said "I don't like you, motherfucker" to LaGrone. Valenzuela slapped, and then punched, LaGrone. Tapia hit Moran with the bat, knocking him to the ground. Valenzuela took the bat from Tapia and hit LaGrone with it. LaGrone fell to the ground, and Valenzuela continued to hit him with the bat, and to kick him while Tapia kicked LaGrone in the face. Moran ran for help.

"Long Beach Police Officers David Hendricks and Brian Bell arrived at the scene at about 1:45 a.m. LaGrone was lying unconscious on the ground. There was blood and vomit on his face. His head was swollen to the size of a basketball. LaGrone was taken to St. Mary's Hospital, where he died on September 25, 1995. Dr. Eugene Carpenter, a medical examiner for the coroner's office, performed an autopsy and testified that blunt force trauma to the head, resulting in a brain fungus, was one of the causes of death." (*Tapia, supra*, at \*3–\*4.)

*Trial*

At trial, the jury was instructed regarding implied and express malice murder, direct aiding and abetting, and murder as a natural and probable consequence of aiding and abetting an

assault.  The prosecutor argued all three theories of liability for murder in closing argument.

The jury found Tapia guilty of second degree murder.

## *Appeal*

On appeal from the judgment after trial, defendants argued that insufficient evidence supported the jury's finding that Valenzuela's beating of LaGrone caused his death and its finding that the murder was a natural and probable consequence of assault with a deadly weapon.  (*Tapia*, *supra*, B117471 at *2.) Defendants also argued instructional error, abuse of discretion regarding the admission of gang evidence, and errors in the imposition of a parole revocation fine with respect to Tapia. (*Ibid*.)  The court of appeal ordered that the abstract of judgment be modified to reflect the correct parole revocation fine, but otherwise affirmed the judgment.  (*Ibid*.)

## *Section 1170.95 Petition*

On February 19, 2019, Tapia filed a petition for resentencing under section 1170.95, claiming that he was convicted of second degree murder under a natural and probable consequences theory, and requesting counsel.  The trial court appointed counsel and ordered briefing.  On May 1, 2019, the People filed an opposition arguing that Senate Bill 1437 and section 1170.95 were unconstitutional.  On August 26, 2019, the People filed a supplemental opposition arguing that, even if section 1170.95 were constitutional, Tapia was not entitled to relief because the evidence at trial clearly established that he

personally murdered LaGrone and could be found guilty under the amendments effectuated by Senate Bill 1437.  On November 1, 2019, Tapia filed a reply arguing that the prosecution relied heavily on the natural and probable consequences doctrine of liability at trial and that there was insufficient evidence of intent to kill.  On the same day, he filed a separate reply arguing that section 1170.95 was constitutional.

At a hearing on the matter, the trial court found that Tapia had made a prima facie showing that he was entitled to relief.[3] Tapia's counsel argued that the prosecution had not met its burden of establishing that Tapia could still be convicted of murder because Tapia's actions did not cause LaGrone's death.[4]

The prosecution disagreed.  Evidence had been presented that Tapia took the first swing with the bat and then the bat was passed to or taken by Valenzuela.  As LaGrone lay on the ground, Tapia stomped on his face and kicked him in the head while Valenzuela hit him in the head with the bat.  Both defendants

---

[3] Tapia's counsel assumed by the time of the hearing that the court had already determined that Tapia had made a prima facie showing of entitlement to relief because the court appointed counsel.  Counsel was prepared to argue at the hearing that the prosecution had not met its burden of establishing that Tapia could still be convicted of murder following the amendments to sections 188 and 189 beyond a reasonable doubt, as required by section 1170.95, subdivision (d)(3).  Neither party complained that the trial court had not issued an order to show cause to set the subdivision (d)(3) hearing, and neither party requested a continuance.

[4] At the hearing, the prosecutor conceded that section 1170.95 is constitutional.

6

inflicted blunt force trauma, which was the cause of death. Kicking LaGrone in the face was evidence of Tapia's intent to kill. The blows with the baseball bat, kicking, and stomping were concurrent causes of death.

Tapia's counsel responded that causation was at issue at trial and, as a result, the prosecution relied heavily on the natural and probable consequences doctrine. Counsel argued that the natural and probable consequences theory of liability was the only theory of murder the prosecution presented at trial.

The prosecutor replied that, although Tapia could have been convicted under a natural and probable consequences theory of murder at trial, he could still be convicted of murder under the current laws. A beating of this nature was sufficient evidence of intent to kill.

The court stated, "[T]he question is: is there sufficient evidence for him to be convicted without the natural and probable consequences [theory] beyond a reasonable doubt by a jury." The court clarified that there is a distinction between the term "natural and probable consequences" when used in regard to causation and "natural and probable consequences" as it relates to a theory of murder liability. Senate Bill 1437 only eliminates natural and probable consequences murder as a theory of murder liability. Although at trial, the jury was instructed with a natural and probable consequences instruction relating to murder, the prosecution had also presented "sufficient evidence" through Tapia's actions that he possessed the intent to kill. In discussing the evidence, the trial court commented that Tapia "hit [LaGrone] in the head once with a baton [i.e., the bat], he

7

then kicked him."[5]  The trial court emphasized that the appellate court determined there was substantial evidence of causation. The court denied the petition, stating:  ". . . I am convinced that beyond a reasonable doubt a jury could have found the defendant – would have found the defendant guilty of murder."

Tapia's counsel clarified that he believed "[t]he case was not tried from an intent to kill perspective."  The trial court agreed, but explained, "[t]hat doesn't mean there wasn't evidence to convince a jury beyond a reasonable doubt that . . . the defendant would have been convicted of murder.  And the petition is denied."[6]

Tapia timely appealed.

## DISCUSSION

Senate Bill 775 is currently in effect.  By its own terms, section 1170.95 applies to Tapia's case.  (§ 1170.95, subd. (a)

---

[5] We note that, while the evidence supports that Tapia did make the first strike with the bat, he struck the other victim, Moran, before Tapia handed the bat to Valenzuela.  Valenzuela used the bat on LaGrone while Tapia kicked and stomped LaGrone's face and head.

[6] Despite the trial court's statement to the contrary, the record demonstrates that Tapia was tried on the theories that he was a perpetrator and a direct aider and abettor, as well as under the natural and probable consequences doctrine.  The jury was instructed under all three theories and the prosecutor argued all three theories to the jury at closing argument.

[persons convicted of murder under the natural and probable consequences doctrine may petition for resentencing].)

Pursuant to amended section 1170.95, an offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)–(3); see also § 1170.95 subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

"Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) The prosecutor shall file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response. (§ 1170.95, subd. (c).) When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the

9

petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid.*) Within 60 days of issuance of the order to show cause, the trial court shall hold a hearing "to determine whether the petitioner is entitled to relief." (§ 1170.95, subd. (d)(1) & (3).) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).) The trial court acts as the finder of fact when determining whether the prosecution has met its burden beyond a reasonable doubt. (See *Ibid.*; *People v. Gentile* (2020) 10 Cal.5th 830, 855 ["section 1170.95 requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief"].)

*Analysis*

Tapia argues that the trial court employed an incorrect "substantial evidence" standard of proof based on its view of what a jury could find. He asserts that the court's failure to follow the proper statutory procedure is reversible. Alternatively, Tapia argues that (1) LaGrone's murder was not overwhelmingly established by the evidence because causation was contested at trial, and (2) the judgment was based entirely on the natural and probable consequences theory of murder liability. The People contend the trial court followed the proper procedure and acted as an independent finder of fact, but even if the trial court erred, the error was harmless.

On appellate review, we independently determine whether the trial court applied the correct standard.  (*People v. Prunty* (2015) 62 Cal.4th 59, 71; *People v. Drayton* (2021) 47 Cal.App.5th 965, 981, abrogated on another ground in *People v. Lewis* (2021) 11 Cal.5th 952, 963.)  Here, the trial court's articulation of the standard of proof at the hearing was not consistent.  Framing the issue at the outset, the trial court incorrectly referred to its inquiry in the section 1170.95, subdivision (d)(3) hearing as evaluating whether "there [is] sufficient evidence for [Tapia] to be convicted without the natural and probable consequences [theory] beyond a reasonable doubt by a jury."  Later, when announcing its ruling, the trial court stated:  ". . . I am convinced that beyond a reasonable doubt a jury could have found the defendant – *would* have found the defendant guilty of murder."  The earlier statement of the standard can be reasonably read to suggest that the trial court framed its decision as one calling for a review for substantial evidence, asking only whether the record evidence could support a jury's finding of guilt.  But the later statement can be read to suggest that the trial court expressed its own view of the evidence (i.e., "I am convinced . . . beyond a reasonable doubt") that a jury "would" convict Tapia.  We are in equipoise as to the correct reading of the record.

The People contend that, even assuming the trial court erred by applying the wrong statutory standard, any error is harmless "because the trial court would have denied [Tapia's] petition under an independent factfinder standard in light of the overwhelming evidence that [he] acted with implied malice."  Tapia counters that the trial court's failure to follow the proper statutory procedure and apply the correct standard of proof constitutes a miscarriage of justice regardless of whether the

11

evidence against him was overwhelming because "'the wrong entity judged the defendant guilty.' (*Rose v. Clark* (1986) 478 U.S. 570, 578.)" Given the ambiguity in the trial court's statement of the standard it applied, which ambiguity arguably is compounded by the trial court's misstatement about Tapia's use of the bat (i.e., stating it was used on the murder victim LaGrone, when it had been used on victim Moran), we decline to resolve the parties' differing approaches to prejudice and harmlessness. Rather, we remand the matter to the trial court either: to clarify that it acted as an independent factfinder, and to affirm that the denial of the petition reflects its own view that the evidence presented at the section 1170.95, subdivision (d)(3) hearing proved Tapia's guilt beyond a reasonable doubt; or alternatively, to rule on the petition as an independent factfinder in the first instance, based on the evidentiary record that was presented at the subdivision (d)(3) hearing.

## DISPOSITION

We remand for the limited purpose of allowing the court either to clarify that it acted as an independent factfinder in denying appellant's section 1170.95 petition, or to redetermine the matter under the correct standard.


MOOR, J.

We concur:


RUBIN, P.J.


KIM, J.