[Cite as *Cleveland Hts. v. Swinney*, 2024-Ohio-5389.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND HEIGHTS, :

    Plaintiff-Appellee, :

                                          No. 113316

    v. :

MONCY SWINNEY, :

    Defendant-Appellant. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 14, 2024

---

Criminal Appeal from the Cleveland Heights Municipal Court
Case No. TRD 2301975

---

### *Appearances:*

William R. Hanna, Director of Law, City of Cleveland Heights, and Pamela Roessner, Prosecutor, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1} Appellant Moncy Swinney ("Swinney") appeals his conviction for failure to comply. After reviewing the facts of the case and pertinent law, we affirm the conviction.

## I. Procedural History and Relevant Trial Testimony

{¶ 2} On May 17, 2023, a citation was filed in the Cleveland Heights Municipal Court against Swinney that alleged he violated Cleveland Heights Cod.Ord. 303.01(B), failure to comply, a first-degree misdemeanor, and Cleveland Heights Cod.Ord. 331.10, failure to signal prior to turning, a fourth-degree misdemeanor. Swinney pled not guilty.

{¶ 3} The case proceeded to a bench trial on September 7, 2023. Two officers testified for the city, and three witnesses testified for Swinney.

{¶ 4} At trial, the testimony established that on May 12, 2023, at approximately 11:45 p.m., Cleveland Heights police officer Connor O'Donnell ("O'Donnell") witnessed someone driving a vehicle that failed to signal at least 100 feet before making a turn. O'Donnell attempted to make a traffic stop with his lights and siren on, but the driver failed to comply and instead fled from the scene. O'Donnell reported to police dispatch the vehicle's information and that it was fleeing. He terminated the pursuit for safety reasons.

{¶ 5} O'Donnell was able to identify the owner of the vehicle using the Law Enforcement Automated Data System ("LEADS"). The vehicle was registered to a female. Using a second law enforcement database, O'Donnell identified the family of the female owner of the vehicle. O'Donnell recognized that a photograph of the owner's ex-spouse was the driver of the vehicle. He was able to discover Swinney's name through the Bureau of Motor Vehicles ("BMV"). O'Donnell testified that he was 100 percent certain that Swinney was the person driving the vehicle.

**{¶ 6}** Cleveland Heights police officer Cameron Knott ("Knott") testified that he was on patrol in the area and heard the report of the fleeing vehicle. He testified that he viewed the fleeing vehicle drive past him. Knott stated that he saw Swinney talking on the phone and made eye contact with him as Swinney drove past him. Knott identified Swinney through his BMV photograph. He was certain Swinney was the person driving the vehicle.

**{¶ 7}** During Swinney's case in chief, Swinney took the stand. Swinney asserted an alibi: he testified that he could not have been the driver of the vehicle seen by the officers on May 12, 2023, a Friday night, because he was at home preparing to celebrate the Sabbath on Saturday with his wife and grandchild. On direct examination, Swinney testified briefly regarding his religious practices:

Q: Do you have certain religious beliefs that occur on a Friday night?

A: Yes. We prepare for the Sabbath for Saturday —

Q: And what is your —

A: — Friday night.

Q: — what is your usual Friday night routine and did that happen on May 12th of this year?

A: Well, my wife and myself, we have our grandbaby and we try to teach her about the importance of keeping the Sabbath, and we prepare our meals the night before, so — you know for the next day.

Q: So what is your Friday night routine in general, and what — was it also happening on May 12th of this year?

A: I was at home. Simply, I was — at home.

Q: And who was with you at the time?

A: My wife and my — and my grand — my three-year-old grandbaby.

Q: Okay. And are you typically home on a Friday night?

A: Yes. Almost always because of these reasons.

{¶ 8} On cross-examination the following exchanged occurred regarding Swinney's alibi:

Q: And what religion are you?

A: Christian.

Q: You're Christian? And what day is the Sabbath?

A: It's on Saturdays.

Q: It's on Saturdays?

A: Yes.

Q: What type of Christianity?

A: Doesn't matter.

THE COURT: Just answer the question.

A: You said what type of Christianity?

Q: Yeah.

A: A Baptist.

Q: You're a Baptist?

A: Yes.

Q: And Baptists don't go to church on Sundays?

A: We don't.

Q: What church do you go to?

A: We don't — we don't — we have a church at home.

Q:  So you don't attend an actual —

A: No.

Q:  — service at a church?

A:  No.

Q:  Okay.

A:  No.

[The prosecutor]:  No further questions.

{¶ 9}    After hearing all the evidence, the trial court found Swinney guilty of violating Cleveland Heights Cod.Ord. 303.01, failure to comply, and not guilty on the other charge of failure to signal.

{¶ 10} Swinney was sentenced on the same day to six months of community-control sanctions as follows: the court suspended his license for six months, required him to perform 50 hours of community service, and ordered him to pay court costs.

{¶ 11}  On September 25, 2023, Swinney timely filed his appeal raising the following two assignments of error:

> **Assignment of Error I:**  The prosecutor's cross-examination of Mr. Swinney on his religious practices constituted structural error.
>
> **Assignment of Error II:**  The prosecutor's cross-examination of Mr. Swinney on his religious practices amounted to plain error.

## II.  Law and Analysis

### A. Structural-Error Argument

{¶ 12} Swinney argues that the prosecutor's cross-examination of him deprived him of a fundamental constitutional right to freedom of religion protected by the First Amendment to the United States Constitution and Ohio Const., art. I,

§ 7.   However, our review of the record shows that Swinney failed to object to the prosecutor's questioning on cross-examination.

{¶ 13} "Structural errors are constitutional defects that defy analysis by harmless error standards because they affect the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." (Cleaned up.) *State v. Perry*, 2004-Ohio-297, ¶ 17.  "Such errors permeate '[t]he entire conduct of the trial from beginning to end' so that the trial court cannot "'reliably serve its function as a vehicle for determination of guilt or innocence.'"" *Id.*, quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991), quoting *Rose v. Clark*, 478 U.S. 570, 577-578 (1986).  "A structural error cannot be harmless . . . ." *State v. Sanchez-Sanchez*, 2022-Ohio-4080, ¶ 164 (8th Dist.).  In Ohio, harmless errors are errors that do not affect substantial rights.  Crim.R. 52(A); *State v. West*, 2022-Ohio-1556, ¶ 88.

{¶ 14} The Ohio Supreme Court has held that failure to object to an error in the trial court precludes a structural-error review.  "[W]hen the accused fails to object to the error in the trial court, appellate courts apply the plain-error standard of review, shifting the burden to the accused to demonstrate that the error affected the trial's outcome." *West* at ¶ 2.  In *West*, the Court considered appellant's argument that a trial judge's comments and questions at trial constituted structural error.  Because no objection was made a trial, the court reviewed for plain error, "i.e., that there was a plain or obvious error that affected the outcome of the trial and resulted in a manifest miscarriage of justice." *Id.*

{¶ 15} Therefore, we overrule Swinney's first assignment of error, and we turn to the plain-error review raised in his second assignment of error.

**B. Plain-Error Argument**

{¶ 16} Plain errors are obvious defects in trial proceedings that affect "substantial rights," and "although they were not brought to the attention of the court," they may be raised on appeal. Crim.R. 52(B); *State v. Brown*, 2013-Ohio-3134, ¶ 61 (8th Dist.). To affect substantial rights, "the trial court's error must have affected the outcome of the trial." *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is recognized "only in exceptional circumstances . . . to avoid a miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 94-95 (1978).

{¶ 17} To prevail under the plain-error doctrine, Swinney must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *State v. Rogers*, 2015-Ohio-1567, ¶ 22. The Ohio Supreme Court has defined an error as "'a deviation from a legal rule' that constitutes an 'obvious defect in the trial proceedings.'" *Rogers* at ¶ 22, quoting *Barnes* at *id*.

{¶ 18} Swinney argues that the prosecutor violated Evid.R. 610 during his cross-examination. Evid.R. 610 provides as follows:

> Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced.

{¶ 19} We find Evid.R. 610 was not violated here. The questioning on cross-examination regarding Swinney's religion was not used to challenge Swinney's credibility based on the nature of his religious beliefs, but to inquire into the alibi that he testified to on direct examination. The questioning on cross-examination by the prosecutor was not concerned with Swinney's choice of religion nor was it trying to deprive him of his right to practice it.

{¶ 20} Moreover, Swinney raised his alibi on direct examination; in other words, he opened the door to the subject of his religion. This court has recognized that "[p]rejudicial error will not be found . . . when the defense 'opens the door' to this evidence." *State v. Clemence*, 2003-Ohio-3660, ¶ 11 (8th Dist.). In *State v. Scott*, 1998 Ohio App. LEXIS 980, *13-14 (8th Dist. Mar. 5, 1998), the defendant complained that the prosecutor improperly commented on his religious beliefs; however, the defendant "through his own testimony opened the door for such comments." This court found no error "when the defense counsel in a deliberate tactical decision opened the door on the point." *Id.* at *14; *see also State v. Croom*, 1996 Ohio App. LEXIS 103, *17 (8th Dist. Jan. 18, 1996) (When one party opens the door to such evidence with testimony, it is unjust to prevent a party from cross-examining the testimonial evidence.).

{¶ 21} In light of the foregoing, Swinney's second assignment of error is overruled.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Heights Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

MARY J. BOYLE, J., and
MICHAEL JOHN RYAN, J., CONCUR